## SPRING TERM, 1934

WALTER H. REID AND WIFE, GRACE REID; McKINLEY REID AND WIFE, EMMA REID; DORA P. REID (WIDOW); GENEVA WEAVIL AND HUSBAND, R. L. WEAVIL; SALLIE MOTSINGER AND HUSBAND, F. L. MOTSINGER; ALVERTA YOKELEY AND HUSBAND, J. R. YOKELEY; AND CONRAD REID AND CLARICE REID, BY THEIR NEXT FRIEND, H. O. SAPP, v. WESLEY REID AND WIFE, DAISY REID; P. C. REID AND WIFE, ADDIE REID; AND ROBAH R. REID AND WIFE, ETHEL REID.

(Filed 28 February, 1934.)

1. **Appeal and Error J g—**

Where the answer to one of the issues determines the rights of the parties the Supreme Court will not consider exceptions and assignments of error relating to other issues.

2. **Adverse Possession C b—Evidence of adverse possession held sufficient.**

Evidence of plaintiffs' testator's actual, open and notorious adverse possession of the land in question under known and visible metes and bounds, in the character of owner and adverse to the claims of all other persons held sufficient to be submitted to the jury. C. S., 430.

3. **Adverse Possession A e—Possession of trustee under constructive trust held adverse to cestuis que trustents under facts of this case.**

Plaintiffs' testator went into possession of land devised the testator's first wife. Testator married again prior to the death of his wife's testator, and left him surviving children by both the first and second marriages. Subsequent to the death of his wife's testator the land was advertised and sold at public auction to ascertain its market value to make settlement between the parties, and plaintiffs' testator bid in the property, and went into possession. The children by his first marriage left home

1—206

upon their coming of age, and plaintiff's testator, for over twenty years after the majority of the youngest child by the first marriage, possessed the land under known and visible metes and bounds, exercised such sole and adverse dominion over the property as its nature afforded, cultivated crops, made repairs, etc., paid taxes, and devised the property to be equally divided between all his children. Upon the children of the second marriage filing a petition in partition, the children of the first marriage filed answer pleading sole seizin, although they had not objected to their father's sole possession of the land for the many years previous, and one of them had returned and purchased part of the land from his father. There was also evidence that the father had settled with the children of the first marriage for their inheritance from their mother. *Held*, the children of the first marriage were barred by twenty years adverse possession, C. S., 430, from setting up their claim of sole seizin.

APPEAL by the defendants from *Sink, J.*, and a jury, at 5 June Term, 1933, of FORSYTH. No error.

This was an action brought by plaintiffs against defendants to partition certain land containing about 130 acres known as the "Wesley Fry Tract." John A. Reid died in December, 1928, leaving a last will and testament, dated 2 February, 1926, which was duly probated, in which he left "one share to be divided equal between all of my other children and my wife, Dora, her receive a child's part all of my property," *et cetera.* John A. Reid had nine children—three by his first wife, the defendants being his heirs at law by his first wife and six by his second wife, the plaintiffs being his heirs at law by his second wife. The defendants in their answer succinctly plead sole seizin.

The judgment of the court below is as follows: "This cause coming on to be heard and being heard before his Honor, H. Hoyle Sink, judge presiding, and a jury, and issues being submitted to the jury and answered by the jury as follows: (1) Was the land described in the petition purchased by John A. Reid, as alleged in the petition and the amendments to the petition? Answer: Yes. (2) Did John A. Reid enter into the possession of and hold said land as trustee for defendants, J. C. Wesley Reid, R. R. Reid and P. C. Reid, as alleged in the answer? Answer: Yes. (3) Did the defendants assert any claim to the title and ownership of the property described in the petition within ten years after their right of action accrued? Answer: No. (4) Did the said John A. Reid hold undisputed possession of the lands described in the petition under known and visible lines and boundaries adverse to all other persons, for 20 years prior to the time of his death? Answer: Yes. (5) Are the plaintiffs tenants in common with the defendants, Wesley Reid, P. C. Reid and R. R. Reid, of the lands described in paragraph 1 of the petition, as alleged in the petition and amendments to the petition? Answer: Yes. It further appearing to the court that subsequent to the bringing of this action and prior to the trial of this

action Dora Reid, the widow of John A. Reid, died, but no administrator was appointed or has been appointed, and as this action was determined in her favor and not against her interest, it is agreed by the parties hereto, without prejudice to the rights of the defendants to appeal, that the interest of the said Dora Reid might be awarded to her administrator hereafter to be appointed by the clerk of the court in the same manner and with the same force and effect as if the said administrator had been a party to this action.

It further appearing to the court that the plaintiffs in this action are all of the lawful heirs of Dora Reid; that all necessary parties save and except the administrator of Dora Reid are parties to this action. It is therefore, ordered, adjudged and decreed that the plaintiffs, Walter H. Reid, McKinley Reid, Geneva Weavil, Sallie Motsinger, Alverta Yokeley, Conrad Reid and Clarice Reid, and the defendants, Wesley Reid, P. C. Reid and Robah Reid, are tenants in common of the lands described in the petition.

It is further ordered, adjudged and decreed that the plaintiffs hereinbefore named are tenants in common to the extent of their pro rata interest in the one-eighth interest of Dora Reid, deceased, subject, however to the said interest being divested by the rights of the creditors of Dora Reid, deceased.

It is further ordered, adjudged and decreed that this case is remanded to the clerk of the Superior Court of Forsyth County to be partitioned under the partition petition according to the terms of the will of John A. Reid and according to law.

It is further ordered, adjudged and decreed that the costs of this action from the time of the filing of the answer by the defendants and transfer of the same to the civil issue docket to determine the ownership of the said property to this time be taxed against the defendants; all other costs of the partition proceedings to be taxed by the clerk according to law.

This 16 June, 1933.        H. HOYLE SINK, *Judge Presiding."*

Numerous exceptions and assignments of error were made by the defendants, who appealed to the Supreme Court. The material ones and the necessary facts will be considered in the opinion.

*S. E. Hall, J. F. Motsinger and E. M. Whitman for plaintiffs.*
*Elledge and Wells for defendants.*

CLARKSON, J. At the close of plaintiffs' evidence and at the close of all the evidence, defendants made motions in the court below for judgment as in case of nonsuit. C. S., 567. The court below overruled these motions and in this we can see no error. For a determination of this controversy, we do not think it necessary to consider any except the fourth

issue: "Did the said John A. Reid hold undisputed possession of the lands described in the petition under known and visible lines and boundaries, adverse to all other persons, for 20 years prior to the time of his death? Answer: Yes."

It is well settled in this jurisdiction, that this Court will not consider exceptions and assignments of error arising upon the trial of other issues when one issue decisive of the appellant's right to recover has been found against him by the jury. *Ginsberg v. Leach,* 111 N. C., 15; *Sams v. Cochran,* 188 N. C., 731 (734); *Lilley v. Cooperage Co.,* 194 N. C., 250 (254).

We think there was sufficient evidence to be submitted to the jury on this issue. C. S., 430, is as follows: "No action for the recovery or possession of real property, or the issues and profits thereof, shall be maintained when the person in possession thereof, or defendant in the action, or those under whom he claims, has possessed the property under known and visible lines and boundaries adversely to all other persons for twenty years; and such possession so held gives a title in fee to the possessor, in such property, against all persons not under disability." C. S., 429.

In *Locklear v. Savage,* 159 N. C., 236 (237-8), speaking to the subject: "What is adverse possession within the meaning of the law has been well settled by our decisions. It consists in actual possession, with an intent to hold solely for the possessor to the exclusion of others, and is denoted by the exercise of acts of dominion over the land, in making the ordinary use and taking the ordinary profits of which it is susceptible in its present state, such acts to be so repeated as to show that they are done in the character of owner, in opposition to right or claim of any other person, and not merely as an occasional trespasser. It must be decided and notorious as the nature of the land will permit, affording unequivocal indication to all persons that he is exercising thereon the dominion of owner." Citing numerous authorities.

*Johnson v. Fry,* 195 N. C., 832; *Gault v. Lake Waccamaw,* 200 N. C., 593 (602). On this aspect the court below charged the jury: "The law says that where one holds undisputed possession of any lands under known and visible boundaries, adversely to all other parties and claimants, that his title is ripened, whether he has a deed or whether he has not. In the instant case the petitioners contend and insist that John A. Reid held for twenty years openly and notoriously and in such manner as to put the world on notice that he contended that the land was his, and that for a period of twenty years prior to his death this dominion was exercised in such a manner as to put these defendants, who were his wards and for whom he had been guardian, upon notice, and that for twenty years prior to his death they did not assert any claim to

said land, that you should so find by the greater weight of the evidence; and if you shall so find you shall answer the fourth issue, Yes. If you shall not so find, you will answer it, No.

That twenty years would be after the youngest child became 21 years of age, because before they, or either of them, became 21 years of age, such a person under 21 years of age is under a disability and such disability as referred to in the statute read you by the court. The defendants, and each of them, contend that such period has not elapsed.

Gentlemen, with respect to what adverse possession is, the court has said, and I charge you, that it must be actual, one must be in the actual possession of the property; that it must be under known and visible boundaries; that it must be exclusive and hostile; and that it must be for the continuous period of twenty years.

If you are satisfied by the greater weight of the evidence, as the petitioners contend you should be, that John A. Reid, although he went in there as trustee, held in that manner for a period of twenty successive and continuous years prior to his death, then you should answer, if you shall so find by the greater weight of the evidence, the issue, Yes."

The exceptions and assignments of error to the above charge made by defendants cannot be sustained. The court below had theretofore charged the jury: "The second issue is: 'Did John A. Reid enter into the possession of and hold said land as trustee for the defendants, J. C. Wesley Reid, R. R. Reid and P. C. Reid, as alleged in the answer?" The court instructs you to answer that issue, Yes. The law made him a trustee for the defendants, and the court charges you to answer that issue, Yes."

This was a correct charge under all the evidence and a safe, salutary principle of law. The question for us to consider, although Jno. A. Reid went into possession of the land as trustee for defendants, were they barred under C. S., 430? We think so. The land in controversy originally belonged to Wesley Fry who died in 1892. He willed same to his wife, Emily Fry, and after her death (she died prior to her husband), to their two children, Malisa Reid—wife of John A. Reid— and Sarah Smith "each daughter or her heirs to receive one-half of the whole estate. I do hereby appoint, constitute and ordain John A. Reid and Riley Smith to be my executors," et cetera. John A. Reid had married a second time before the death of Wesley Fry. Sometime after Wesley Fry died, before 1897, the tract of land in controversy was sold—after advertisement—at public auction to ascertain its value to make settlement between the two interests, and was bid in by John A. Reid for about $1,105. He went into possession of same about 1897 and lived on it until he died in 1928—"called it his home. He farmed the land and had some wood cut from it and hauled to town, and did some repairing and building. He rented out a portion of the land."

"John A. Reid farmed the Wesley Fry tract just like all farmers, tended crops, tobacco and corn and wheat, cut wood, worked about away from home some. He was a carpenter and worked in the Union Cross wagon shops about one year, I believe. He built an addition to the house and remodeled the barn and built a tenant house. He built the tenant house some ten years before he died."

"He farmed like all of us try to do, raised all kinds of grain and stuff, and I think he cut wood and hauled, maybe cut some timber for the wagon shop, just working like a farmer would. He repaired the house and I think he built an automobile shed, and maybe repaired the barn some and built a tenant house. He made the repairs along at different times."

The defendants, P. C. Reid, became of age about 1897, J. C. Wesley Reid, about 1901, and Robah R. Reid, 1905. As each of them reached his majority he left home. P. C. Reid and Wesley Reid never did return except on visits, and Robah Reid returned and rented land from his father, John A. Reid. Robah continued to rent land from his father until about 1912 or 1913. During the 31 or 32 years that John A. Reid lived on the "Wesley Fry tract" of land, he treated it in every respect as other farmers treated their land in that community. He cut wood off the place and sold it, he remodeled and repaired buildings; he constructed new buildings and raised corn, wheat, tobacco and other crops on the farm. He listed the property for taxes and paid taxes on it. No one ever disputed his ownership of the property. He left a will, in which he provided for the disposition of his land, as well as his personalty, and he owned no other land at the time of the execution of his will and at his death. He provided for his widow and all of his children by both wives in his will, and named the defendant, Wesley Reid, as his executor and the defendants accepted their share of said John A. Reid's personalty under his will.

The present action was commenced 18 June, 1930. There was also evidence to the effect to indicate estoppel, that John A. Reid, the father of defendants, paid defendants their full interest in the estate of their grandfather, Wesley Fry. That defendant, J. C. Wesley Reid, purchased in 1922 about 20 acres of the Wesley Fry land from his father, John A. Reid. All of the defendants when John A. Reid died in 1928, were over 21 years of age and sui juris. This was a contest between two sets of children by the first and second wife of John A. Reid. In N. C. Practice and Procedure in Civil Cases (McIntosh), pp. 103-4, it is said: "Laches, or unreasonable delay, independently of any statute of limitation, will prevent relief in equity, upon the principle that equity aids the diligent and not the slothful. When a claimant has slept on his rights until the rights of innocent third persons have intervened, or it

would be otherwise inequitable to change the existing conditions, equitable relief may be denied, although the statute of limitation has not barred the claim. Conscience, good faith, and reasonable diligence are necessary to call forth the exercise of the peculiar powers of a court of equity. No particular rule can be given as to what will constitute laches; it must depend upon the circumstances of each case."

We think that defendants are barred by the statute C. S., 430, under the facts and circumstances of this case. Under the view we take of this case that the evidence on the 4th issue was sufficient to be submitted to the jury, and found in favor of plaintiffs. The many exceptions and assignments of error, as to the admission and exclusion of evidence, issues tendered, *et cetera,* made by the defendants become immaterial on this record. The court below gave the contentions fully for both plaintiffs and defendants and charged the law applicable to the facts. It may be said that the whole record of exceptions and assignments of error made by defendants are carefully and accurately set forth in accordance with the rules of this Court, but become immaterial except to those bearing on the 4th issue which cannot be sustained. In the record, we find in law

No error.