FLORA WILLIAMS v. CHARLES STORES COMPANY, INC., ASHEVILLE GAS COMPANY, AND E. C. HORTON.

(Filed 18 March, 1936.)

1. **Negligence A c—Store proprietor is under duty to exercise ordinary care to keep premises in reasonably safe condition.**

   While the proprietor of a store is not an insurer of the safety of customers while on the premises, he owes them the duty to exercise ordinary care to keep the premises in a reasonably safe condition and to give warning of hidden perils or unsafe conditions known to him, or which he could have discovered by reasonable inspection and supervision.

2. **Negligence B c—Intervening negligence must break sequence of events in order to insulate primary negligence.**

   In order for primary negligence to be insulated by intervening negligence, the intervening negligence must be such as to break the sequence of events, must be palpable and gross, and must begin to operate subsequent to the primary negligence and continue to operate until the instant of injury.

3. **Negligence A c—Evidence of negligence and proximate cause held sufficient for jury as against store proprietor.**

   The evidence tended to show that plaintiff was injured while a customer in a store when a heavy glass globe on a gas lighting fixture fell and hit her, that the fixture belonged to the store, and that at the time of injury a wire basket, usually kept in place over the globe to prevent injury if the globe should break or fall, was not fastened over the globe. Defendant store offered evidence tending to show that a few days before the injury the gas company had repaired and cleaned the fixture and that the fixture had not been touched since. Defendant gas company offered evidence tending to show that it had left the fixture in a safe condition, that it could not have become unsafe unless tampered with. *Held:* Defendant store's motions to nonsuit on the ground of insufficiency of the evidence and for that the evidence showed that the injury was caused solely by the negligence of defendant gas company were properly overruled, the conflicting evidence of negligence being for the jury, and there being evidence of concurrent negligence and breach of duty on the part of both defendants with respect to the same instrumentality.

4. **Master and Servant D a—Injured third person may hold independent contractor liable under doctrine of imminent danger.**

   Ordinarily, an independent contractor is not liable to a third person for an injury sustained after completion of the contract and the acceptance of the work, but he may be held liable in such circumstances when he turns the work over in such a defective condition that it is imminently dangerous to third persons.

5. **Trial D a—**

   On motion to nonsuit, the evidence must be considered in the most favorable light to plaintiff.

**6. Master and Servant D e—**

A servant may be held liable by a third person for an injury sustained as a result of the servant's negligence in the performance of a duty owed to the public as well as to the master.

**7. Negligence A c—Evidence held for jury on issue of liability of company repairing fixture for injury caused by fixture's fall.**

The evidence tended to show that defendant gas company usually repaired and cleaned gas fixtures belonging to its customers in order to stimulate the use of gas, that the gas company was requested to repair and clean a gas fixture in its codefendant's store, that its employee worked on the fixture, and that a few days thereafter the heavy glass globe of the fixture fell and injured plaintiff, a customer in the store, as she was standing in the aisle of the store. There was evidence that a wire basket, usually kept in place over the glass globe to prevent injury in case the globe broke or fell, was not in place at the time of the injury. Defendant store offered evidence tending to show that the fixture had not been touched by its employees since defendant gas company worked on it, and defendant gas company offered evidence tending to show that its employee left the fixture in a safe condition, and that it could not have become unsafe unless tampered with. *Held:* The conflicting evidence was properly submitted to the jury on the question of the liability of defendant gas company, regardless of whether it was an employee or independent contractor, since there was evidence that it turned the fixture over in an imminently dangerous condition within the rule of liability of an independent contractor to third persons, and that it was negligent in the performance of a duty owed the store and the public within the rule of liability of a servant to third persons.

**8. Evidence K a—**

The testimony of medical experts as to the permanency of plaintiff's injuries and their nature and effect, based upon personal examination of plaintiff and deduced from their technical knowledge and experience, *is held* competent.

**9. Appeal and Error J d: J e—**

The burden is on appellants to show error and that the alleged error was prejudicial.

**10. Evidence D f—**

Testimony of a witness on redirect examination relating to matters elicited on cross-examination *held* competent, the testimony not containing statements of controverted fact.

**11. Damages F a—Plaintiff may recover medical expenses upon showing that she had been attended by physicians and had been in hospital.**

Where plaintiff shows that she had been attended by three physicians and had spent some time in the hospital as the result of her injuries, and that her condition was such as would require medical attention in the future, a charge to the jury that plaintiff might recover, as an element of damage, the actual expenses for nursing and medical attention paid by plaintiff, or for which she had become indebted, and such further expenses as the jury should find from the evidence plaintiff would be put to in the future, is without error, although plaintiff failed to introduce evidence

that she had actually paid for any medical services, since it must be presumed from the evidence introduced that plaintiff had incurred liability therefor.

**12. Trial E f—**

Errors in the statement of the contentions of the parties will not ordinarily be considered on appeal when not brought to the trial court's attention at the time.

**13. Appeal and Error J g—**

Where the answer of the jury to one of the issues makes unnecessary the answering of certain subsequent issues, exceptions to the charge relating to such subsequent issues need not be considered on appeal.

**14. Trial E e—**

An exception to the refusal of the court to give instructions requested will not be sustained when it appears that the requested instructions were substantially given, and that the court inserted therein or added thereto correct instructions of law or instructions which were not prejudicial when the charge is construed as a whole.

**15. Negligence B g—**

The burden on the issue of primary and secondary liability is upon the defendant claiming that its codefendant is primarily liable.

**16. Trial E g—Where it appears that jury could not have been misled by charge, an exception thereto cannot be sustained.**

Where it appears that the charge properly placing the burden of proof on one of the issues upon one of defendants could not have been understood by the jury as placing the burden of proof on any other issue upon such defendant, an exception to the charge upon the issue cannot be sustained.

**17. Same—Charge will be construed contextually as a whole.**

An exception to the charge for that it stated the jury would be "warranted" in answering an issue in the affirmative if they found the determinative facts by the greater weight of the evidence, will not be sustained when it appears that in the preceding paragraphs, in stating the same principle of law in almost identical language, the court correctly instructed the jury that it would be their "duty" to so answer the issue if they were satisfied of the existence of the determinative facts by the greater weight of the evidence.

**18. Negligence B g—**

The question of primary and secondary liability between defendants held properly submitted to the jury under the rule laid down in *Johnson v. Asheville*, 196 N. C., 550.

**19. Evidence G a—**

An exception to the production before the jury of a duplicate of the globe which struck plaintiff *is held* without merit, defendants having previously exhibited parts of the same instrumentality and having failed to request the court to restrict the testimony to the illustration of the witness' testimony.

APPEAL from *Oglesby, J.,* at December Term, 1935, of BUNCOMBE.

Plaintiff instituted her action against Charles Stores Company, Inc. (hereinafter called Stores Company), and E. C. Horton, manager of said Stores Company, and the Asheville Gas Company (hereinafter called Gas Company), in the general county court of Buncombe County, to recover damages for a personal injury alleged to have been caused to her by the negligence of the defendants.

She alleged, substantially, that her injury was due to the falling of a heavy glass globe from a gas lighting fixture insecurely suspended ten or twelve feet above an aisle in the department store of defendant Stores Company in Asheville, N. C., said globe striking plaintiff on her head and causing partial paralysis; that she was a customer in the store at the time, and that defendants were negligent in respect to the inspection, supervision, maintenance, and repair of the lighting fixtures and devices for supporting such heavy object suspended over a walkway in a store much used by customers and the public.

Defendant Gas Company filed answer admitting it furnished gas for lighting, but that all the fixtures in the store were owned and controlled by its codefendant Stores Company, admitting that a globe maintained by the Stores Company did fall and strike the plaintiff, but denied all allegations of negligence on its part.

Defendants Stores Company and E. C. Horton filed answer admitting the operation of a general department store for sale of merchandise, and that in the store were gas pipes and equipment, and that gas lighting fixtures were suspended from the ceiling; admit that while plaintiff was a customer in the store a globe from said gas lighting fixture fell and struck the plaintiff, but denied that they were negligent in any respect, and alleged that whenever it became necessary for said lighting fixtures to be repaired the Stores Company contracted with and customarily employed the defendant Gas Company for that purpose, due to the technical knowledge and experience required; that pursuant to this practice, shortly before the occasion when plaintiff was struck, defendant Gas Company inspected said gas fixture, removed the globe for the purpose of repair, and in replacing same negligently failed to securely fasten same, and as a result the globe fell and struck plaintiff; that the insecurity of the globe was not discovered by defendant Stores Company until after it fell; and defendant Stores Company alleges if either of the defendants were negligent, its negligence was passive and inactive, while that of defendant Gas Company was positive and active, insulating the Stores Company's negligence, and that if negligent at all, its liability was secondary to that of defendant Gas Company.

Defendant Gas Company replied to the answer of its codefendants and admitted that it was engaged in furnishing and distributing gas for

lighting purposes, and that it customarily did certain repair work to gas lights when called upon; that pursuant to request of the Stores Company on the occasion alleged it did certain repair work to lights in the store, and removed the globe, but that it replaced the same in proper manner, and denied all allegations of negligence.

The cause came on for trial at the September Term, 1935, of the general county court for Buncombe County, and upon the pleadings and evidence offered by plaintiff and defendants, issues were submitted to the jury, who answered them as follows:

"1. Was the plaintiff injured by the joint and concurring negligence of the defendants, as alleged in the complaint? Answer: 'Yes.'

"2. Was the plaintiff injured by the negligence of the defendant Asheville Gas Company, as alleged in the answer of the Charles Store? Answer: ..............

"3. Was the plaintiff injured by the negligence of the defendant Charles Stores Company, as alleged in the complaint? Answer: .......... .

"4. Was the plaintiff injured by the negligence of the defendant E. C. Horton, as alleged in the complaint? Answer: .............

"5. Is the liability of the defendant Asheville Gas Company primary, and that of the defendants Charles Stores Company and E. C. Horton secondary, as alleged in the answer of the defendants Charles Stores Company and E. C. Horton? Answer: 'No.'

"6. What damages, if any, is the plaintiff entitled to recover? Answer: '$17,500.' "

From judgment on the verdict, the defendants appealed to the Superior Court. Each defendant filed numerous assignments of error, based upon exceptions taken during the trial in the general county court. Defendant Stores Company noted 75 exceptions, embraced in 64 assignments of error, and defendant Gas Company 55 exceptions, embraced in 40 assignments of error.

Upon the hearing before the judge of the Superior Court he overruled all defendant Stores Company's assignments of error (other than formal ones), except two with reference to the charge of the trial judge, and overruled all of defendant Gas Company's assignments of error (other than formal ones), except those noted to the judge's charge, and, on account of assignments of. error thus sustained, rendered judgment awarding a new trial.

From the judgment of the Superior Court granting a new trial, plaintiff appealed to this Court, and from so much of said judgment in the Superior Court as overruled its assignments of error and exceptions in the county court as to plaintiff and defendant Gas Company, defendant Stores Company appealed; and from so much of the judgment in the Superior Court as overruled its assignments of error and exceptions taken in the county court, defendant Gas Company appealed.

*Weaver & Miller, William J. Cocke, Jr., and R. R. Williams for plaintiff.*

*Jones & Ward for defendant Asheville Gas Company.*

*Harkins, Van Winkle & Walton for defendants Charles Stores Company and E. C. Horton.*

DEVIN, J. This case presents the unusual situation in which both the plaintiff and each defendant appear before this Court in the dual rôle of appellant and appellee, not only as between plaintiff and defendants, but also between the two defendants, and we are favored with three records and seven briefs.

On the trial in the general county court both the defendant Stores Company and the defendant Gas Company noted numerous exceptions, which they have preserved on their appeals to this Court, and the plaintiff in her appeal assigns as error the granting of a new trial by the judge of the Superior Court.

This case comes to us by appeal from a judgment rendered by the Superior Court, which here occupied the position of an intermediate appellate court, and we are called upon to review the rulings of the judge of the Superior Court upon the assignments of error set out in the appeal from the general county court as they were presented to him.

While the record is voluminous and there are many exceptions and assignments of error, a careful examination and analysis of these show that the determinative questions presented for decision are comparatively few.

1. Was there error in overruling the motions of the defendant for judgment as of nonsuit? We think not.

Stores Company contends that the falling of the globe and consequent injury to the plaintiff was due to the negligence of the Gas Company, and that the Gas Company's negligence was the sole proximate cause of the injury, or that the negligence of the Gas Company was active and positive and insulated any negligence on the part of the Stores Company.

It is well settled that while the proprietor of a store is not an insurer of the safety of a customer while on the premises, he does owe a duty to such person to exercise ordinary care to keep the premises in a reasonably safe condition and to give warning of hidden perils or unsafe conditions in so far as same can be ascertained by reasonable inspection and supervising. *Bowden v. Kress,* 198 N. C., 559; *Parker v. Tea Co.,* 201 N. C., 691; *King v. Thackers,* 207 N. C., 869.

The doctrine of insulated negligence set forth in *Ballinger v. Thomas,* 195 N. C., 517, is inapplicable. There was evidence of concurrent negligence and breach of duty with respect to the same instrumentality. In order to insulate the original or primary negligence, the new and

independent intervening cause must be such as to break the sequence of events, must be palpable and gross, and must begin to operate subsequent to the original act of negligence and continue to operate until the instant of injury.   *Hinnant v. R. R.,* 202 N. C., 489; *Herman v. R. R.,* 197 N. C., 718.

The questions of negligence and proximate cause were properly left to the jury.

Defendant Gas Company contends it was an independent contractor and owed no duty to third parties, and that it had completed the work it was called upon to do, that same had been accepted and it had left the premises; that there being no privity of contract between it and an invitee on the premises, it owed her no duty.

While the general rule is that an independent contractor is not liable for injuries to a third person accruing after the contract is completed and the work accepted this rule does not apply where the finished work is turned over by the contractor in a manner so negligently defective as to be imminently dangerous to third persons.   14 R. C. L., 107; 45 C. J., 885; 241 Ill. A., 583.

This involves the question of what was the relationship of the Gas Company to the Stores Company, and to the work alleged to have been negligently performed.

Upon motion to nonsuit, the evidence must be taken in its most favorable light for the plaintiff.   The evidence here tends to show that the gas fixtures in the store, including the globes and mantles, belonged to the Stores Company, and that the Gas Company was under no explicit contract to keep same in repair, but that incident to its business of furnishing gas it was directly interested in the continued and unobstructed flow of gas through its pipes and outlets, as this was its only source of profit; that for years the uniform custom and practice was, when there was complaint anywhere about a gas fixture being out of order, to send a man to make the repairs; that this work of repair, inspection, and cleaning up service was carried on outside of any written contract; that no charge to the consumer was made for the work, but it was done "to keep the gas burning" in the interest of the Gas Company; that on Saturday, 17 November, 1934, complaint was made by defendant Stores Company of low pressure, and a man was sent to them on that day or the following Monday or Tuesday to repair the trouble; that the gas lights in defendant's store were for use when electric lights failed, and a pilot light constantly burned; that around the light was a large heavy glass globe, held in place by a ring and lugs, and there was under and around the globe a wire net or basket fastened by screws to the fixture above, to prevent the globe falling in case it came off or was broken by the heat; that the Gas Company's employee knew the globe was over an

aisle in the department store where customers, employees, and others were continually passing and standing, and that he knew it would be dangerous to anyone walking there if the globe was not properly secured; that if the wire net or basket was not in place there was danger of the globe falling, because it might break or crack or fall out of its ordinary clip.

The manager of the Gas Company testified in part as follows:

"If there is anything about it that needs new material, we furnish it, if we have not, they furnish it for us. It would be the duty of my men when they put this wire basket back on to attach it properly. Of course, they know how to do that. And that is their business. When they get up to repair a light, the first thing they do, if there is a wire guard there, is to unscrew the screws and take them off, got to do that before they do anything else. When they get through, they put the globe back in, wire back, and fix it back securely. That has a tendency to keep the globe from falling in the event anything should happen to this clip above there."

It was in evidence that the Gas Company knew its customers in calling for service and repairs relied upon the knowledge, experience, and technical ability of its employees.

It was also in evidence that the Gas Company's employee, after doing some work on this and other lights in the store, left; that no one in the store touched or handled this globe or fixture; that it was against the rules of the store for any employee of the store to do so; that a few days thereafter, when the globe fell and struck the plaintiff, the wire netting or basket was off, or hanging down on one side; that when the man came to work, the wire basket was underneath the globe.

There was testimony to the contrary on the part of defendant Gas Company, tending to sustain its contentions that the work was properly done by its employee; that the globe was securely fastened when he left; that there was no wire netting under the globe when he went there to work; that the Stores Company had paper pennants strung on wires near the light; that when globe was securely fastened it would not be likely to fall unless it was tampered with or there was an unusual jar.

But it is apparent that under any view of the law applicable the evidence in the case at bar is sufficient to require its submission to the jury on the pertinent questions of negligence and proximate cause.

If it be considered that the evidence presents the phase that defendant Gas Company was employed by Stores Company to make the repairs to its lights, and thereby became the employee of its codefendant, it is held as a general rule that where a duty rests upon an employee to perform certain acts for the benefit of his employer and the public as well, negligence resulting in injury would impose liability on the employee. 18 R. C. L., 820.

And the same result is reached if we consider it under the doctrine of independent contractors, as contended by defendant.

In the case of *Trust Co., Admr., v. Electric Co.,* 253 U. S., 212, a contractor was employed to stretch a political banner across a street. This was done by attaching one end of a wire to a chimney. Five days later, during a storm, this caused a brick to be dislodged and fall and strike a passerby, injuring him. It was held the facts warranted a verdict for the plaintiff and did not relieve the defendant of a duty with respect to the plaintiff and other travelers in the street with whom it had no contract.

The Court further said: "An act of this kind that reasonable care would have shown to endanger life might have made the actor guilty of manslaughter. . . . The same considerations apply to civil liability for personal injuries from similar causes that would have been avoided by reasonable care (*Gray v. Boston Gas Light Co.,* 114 Mass., 149). A man is not free to introduce a danger into public places even if he be under no contract with the person subjected to the risk." And it was held that where a danger had been called into existence by the defendant, it could not escape liability for the results of conditions that it knew and had created by stepping out of control a few days before the event.

In *Overstreet v. Security Storage Co.,* 138 S. E., 552 (Va.), it is held (quoting from *Lisle v. Anderson,* 61 Okl., 68): "Whenever the circumstances attending the situation are such that an ordinarily prudent person could reasonably apprehend that, as a natural and probable consequence of his act, another person, rightfully there, will be in danger of receiving an injury, a duty to exercise ordinary care to prevent such injury arises, and if such care is not exercised by the party on whom the duty rests and injury to another person results therefrom, liability on the part of the negligent party to the person injured will generally exist, in the absence of any other controlling element or fact, and this, too, without regard to the legal relationship of the parties."

And in the *Overstreet case, supra,* the following is quoted from *Wittenberg v. Seitz,* 8 App. Div., 439, 40 N. Y. S., 899: "There was no contractual relation existing between these parties, and therefore the liability of the defendant for the injuries received by the plaintiff, if any exists, results from his failure to observe the obligation which the law imposes upon a party engaged in the prosecution of any work, of performing the same in such a manner as not to endanger the lives or persons or other parties. This is a very well settled principle, and it is applicable to all cases where a person is engaged in the performance of work which, without the exercise of a reasonable degree of care and prevision, may be attended with risk and danger to others."

WILLIAMS *v.* STORES CO., INC.

If the plaintiff has offered evidence tending, in any aspect, to show that the defendant Gas Company negligently omitted to fasten the safety device beneath the globe which was suspended over an aisle in a department store constantly used by many persons as customers and employees, that would produce a situation potentially dangerous by reason of the liability of the globe to fall, and would bring this case within the rule laid down in *Trust Co. v. Electric Co., supra,* and in the case of *Devlin v. Smith,* 89 N. Y., 470, and in *McPherson v. Buick Motor Co.,* 217 N. Y., 382.

In the leading case of *Devlin v. Smith, supra,* the plaintiff was injured by the breaking of a scaffold which had been furnished by a contractor. Recovery was resisted on the ground that there was no privity of contract between the contractor and the plaintiff, even if, through the contractor's negligence, the scaffold was defective. But it was held that liability would rest not upon any contract between the contractor and the party injured, but upon the duty which the law imposes on everyone to avoid acts in their nature dangerous to the lives of others, and that the erection of a defective scaffold was imminently dangerous. *O'Brien v. Am. Bridge Co.,* 110 Minn., 364, 136 Am. St. Rep., 503.

In the case of *McPherson v. Buick Motor Co., supra,* the cases on this subject are analyzed by *Mr. Justice Cardozo,* and the doctrine of things "imminently dangerous" as affecting the liability of contractors held to include those instrumentalities which are not inherently destructive, but become so if imperfectly constructed or negligently used. "If the nature of the thing is such that it is reasonably certain to place life and limb in peril when negligently made or used, it is a thing of danger. In such circumstances the presence of known danger attendant upon a known use makes vigilance a duty."

"The general rule is that the contractor, after an acceptance of the work by the owner, is not liable to third parties who have no concurrent relationships with him for damages subsequently sustained by reason of his negligence in the performance of his contract duties." *Casey v. Bridge Co.,* 114 Mo. App., 47. But this rule is subject to the qualification that an action on the ground of negligence may be maintained by a stranger to a contract for the execution of a specific piece of work if the product of the stipulated work be imminently dangerous to third parties or to the public.

In 41 A. L. R., beginning on page 8, will be found a comprehensive monograph, with annotations of the leading cases, on the subject of the liability of independent contractors for injuries to third persons by defects in completed work.

2. Was there error in the rulings of the trial court upon the exceptions to certain testimony of the plaintiff's witnesses, Drs. J. C. Rich, J. F. Brownsberger, and Forest E. Bliss?

These witnesses were admitted to be medical experts, and each of them had treated the plaintiff and testified as to her condition, and from personal knowledge gave their opinions as to the permanency of her injuries and their nature and effect. The defendants admitted in their pleadings that the plaintiff had been struck on the head by the falling of the globe. The manner in which she received her injuries was not controverted. These physicians were examined and cross-examined by both defendants at length, and their opinions both as the result of personal examination and deduced from their technical knowledge and experience were competent, and the rulings of the court on objections to this testimony cannot be held for reversible error. The burden was imposed upon the defendants not only to show that there was error in the admission of testimony, but that the error affected the result. One of the questions asked was similar to that held improper in *Plummer v. R. R.,* 176 N. C., 279, but here it was asked on redirect examination in response to matters elicited on cross-examination. Nor did the answers contain statements of controverted facts, as in *Mule Co. v. R. R.,* 160 N. C., 252.

3. Was there error in the charge of the trial court on the issue of damages with respect to medical expenses?

The judge of the county court charged the jury on this question as follows:

"Damages for personal injuries, such as those complained of in this action, include actual expenses for nursing, medical services, loss of time and earning capacity, mental and physical pain and suffering.

"By actual expenses for nursing and medical expenses is meant such sum as the plaintiff has expended therefor in the past, or for which she has become indebted, and such further expenses for nursing and medical services as she will, in your best judgment, based upon the evidence in this case and by the greater weight thereof, be put to in the future, which flow directly and naturally from any injury she may be found by you to have sustained on account of the negligence of the defendants, complained of in this action."

There was no exception noted by the defendant Stores Company, but the defendant Gas Company noted an exception to the last paragraph hereinbefore quoted. It is apparent that the portion excepted to by the defendant Gas Company merely defines and explains what was stated in the preceding paragraph to which no exception was taken, and refers to prospective liability therefor in the future. The defendant Gas Company contends, however, that there is error in this portion of the charge under the rule laid down in *Wallace v. R. R.,* 104 N. C., 442.

An examination of the *Wallace case, supra,* shows that after the judge in that case had correctly laid down the rule for the admeasurement of damages for personal injuries (quoting from 3 Sutherland on Damages,

261), it was at the request of counsel for the plaintiff that the jury should not consider nursing or medical attendance in making up their verdict, that the court added: "There is no evidence, however, offered that anything was paid for actual nursing or any amount was paid for medical attendance." This case of *Wallace v. R. R., supra,* seems to have been considered by this Court three times, 98 N. C., 494; 101 N. C., 454. In none of the reports of this case does it appear that any evidence of nursing or medical attendance was offered, and the other cases cited by the defendant Gas Company are based on what was said in the *Wallace case, supra.* In the instant case it was in evidence that the plaintiff had been attended by three physicians and had spent some time in a hospital, and presumably had incurred liability for nursing and medical services. Without showing that she had actually paid for them, liability therefor would have been an element of damage proper to be considered, and the evidence tended to show that her condition was such as would require medical services in the future. So that she was entitled to have the jury consider what these services had been, and would prospectively be, reasonably worth, under all the circumstances.

Therefore, we cannot hold for error the expressions used in the charge on this subject.

4. Was there error in the charge of the court in the other respects as to which exceptions were noted?

Twenty-nine exceptions were noted to the judge's charge, but many of these were to statements of the contentions of the parties, and any errors contained in statement of contentions not called to the attention of the judge at the time will not ordinarily be considered. *S. v. Baldwin,* 184 N. C., 791.

The definitions of negligence and proximate cause and of the duty devolving upon the defendants were properly stated.

The first issue, "Was the plaintiff injured by the joint and concurring negligence of defendants, as alleged in the complaint?" was answered by the jury in favor of the plaintiff, and the jury was instructed if they answered the first issue "Yes," they would not answer the second, third, and fourth issues, but if they answered the first issue "No," they would consider the second, third, and fourth issues. Most of the exceptions noted by the defendants were to the instructions of the court upon the second, third, and fourth issues, but these issues not having been answered by the jury, the exceptions to the charge on these issues become moot and need not be considered. As was said by *Mr. Justice Clarkson,* speaking for the Court in *Reid v. Reid,* 206 N. C., 1: "This Court will not consider exceptions and assignments of error arising upon the trial of other issues when one issue decisive of appellant's right to recover has been found against him." *Ginsberg v. Leach,* 111 N. C., 15.

The defendant Stores Company excepted to the refusal of the court to give two instructions prayed for by it upon the question of primary and secondary liability, but upon examination of the charge it appears that both of these requests were substantially stated in the general charge. These requests were addressed to the fifth issue. Upon that issue the burden of proof was properly placed upon the defendant Stores Company, as against its codefendant, the Gas Company (*Stein v. Levins,* 205 N. C., 302), and in charging the jury the trial judge inserted, parenthetically, in the requested instruction the words, "the burden being upon the Charles Stores to so satisfy you." That the words were used in this sense is clearly apparent, and could not have been understood by the jury to place the burden of proof upon the Stores Company in any other respect.

The other prayer of defendant Stores Company was given verbatim, except at the close the court uses this language: "The court charges you that you would be authorized and warranted in answering the issue 'Yes,' but if you are not so satisfied, you would answer it 'No.' " The defendant Stores Company contends that the judge should have used the phrase, "it would be your duty" instead of saying "you would be authorized and warranted."

The use of the words "authorized and warranted" in this connection was improper, as the words used would ordinarily be understood to convey an implication of permission or discretion, rather than necessarily an imperative and mandatory direction. *Jones v. Commissioners,* 135 N. C., 218; *S. c.,* 137 N. C., 579. This might be held for error but for the fact that in the preceding paragraphs, in stating the same principle of law, in almost identical language, the court properly instructed the jury if they found the same facts which were incorporated in the requested instruction to be true, it would be their duty to answer the issue in favor of Stores Company.

The question of primary and secondary liability as between the defendants, raised by the pleadings, was properly submitted to the jury in accordance with the rule laid down by this Court in *Johnson v. Asheville,* 196 N. C., 550, and *Taylor v. Construction Co.,* 195 N. C., 30, and was decided against the defendant Stores Company by the verdict of the jury.

5. The exception to the production before the jury of a duplicate of the globe which struck the plaintiff is without merit. The defendants had previously exhibited parts of the same instrumentality. Nor was request made to the court to restrict the testimony to the illustration of the witness' testimony. *Barber v. R. R.,* 193 N. C., 691; *Ledford v. Lumber Co.,* 183 N. C., 614; *Beck v. Tanning Co.,* 179 N. C., 123; *Hill v. Bean,* 150 N. C., 436.

There were other exceptions noted in the long trial before the jury, but after examining them we find no reversible error, or need for detailed comment.

The case seems to have been fairly tried. The issues of fact raised by the pleadings were properly submitted to the jury. Full opportunity was given all parties to present evidence in support of their contentions, and the jury, the triers of the facts, who heard the testimony as it fell from the lips of the witnesses, have rendered their decision, and we find no sufficient ground to disturb the result thus reached.

The briefs filed by counsel in this case, as well as the oral argument, showed diligent investigation of the decided cases and a careful study of the law relating to the questions here presented, as well as an able marshaling of the legal learning applicable to the litigated facts, as contended by the plaintiff and defendants.

We reach the conclusion that the rulings of the judge of the Superior Court upon the defendants' exceptions from which they have appealed to this Court must be sustained, and that upon the plaintiff's exception to the granting of a new trial the judgment must be reversed.

Upon plaintiff's appeal, judgment reversed and case remanded to the Superior Court of Buncombe County for judgment in accordance with this opinion.

Upon appeal of defendant Charles Stores Company, judgment affirmed.

Upon appeal of defendant Asheville Gas Company, judgment affirmed.