**Margaret C. HILL, Appellant,**

v.

**JAMES WALKER MEMORIAL HOSPITAL and Orkin Exterminating Company, Appellees.**

No. 12822.

United States Court of Appeals Fourth Circuit.

Argued Feb. 7, 1969.

Decided March 11, 1969.

Israel Steingold, Norfolk, Va. (Steingold, Steingold & Chovitz, Norfolk, Va., on brief), for appellant.

John F. Crossley, Wilmington, N. C. (James, James & Crossley, Wilmington, N. C., on brief), for appellee Orkin Exterminating Co.

Lonnie B. Williams, Wilmington, N. C. (Marshall & Williams, Wilmington, N. C., on brief), for appellee James Walker Memorial Hospital.

Before SOBELOFF, CRAVEN and BUTZNER, Circuit Judges.

SOBELOFF, Circuit Judge:

In this diversity action for personal injuries, Margaret C. Hill, plaintiff below, appeals from the District Court's order granting defendants' motions for summary judgment. Her complaint alleged that on June 6, 1964, while a paying patient of the defendant James Walker Memorial Hospital, she was frightened when a rat ran across her feet and caused

her to fall into a bathtub. Her resultant injuries are alleged to have been proximately caused by the defendant hospital's negligence "in allowing the presence of rats on its premises" and the defendant Orkin Exterminating Company's negligence, said to consist of "failure in properly ridding the premises of rats." The parties stipulated that a contract between Walker Memorial and Orkin, in force at the date of the plaintiff's injury, obligated Orkin "to accomplish the insect and rodent control sanitation services" at the hospital.[1]

In separate Answers to the Complaint, each defendant denied the negligence attributed to it and also set up plaintiff's contributory negligence as a defense. The hospital pleaded charitable immunity as an additional defense. The parties stipulated that the hospital was a charitable institution carrying insurance to cover any liability imposed upon it by law.

After these stipulations had been entered, the defendants moved for and were granted summary judgment. The hospital based its motion on charitable immunity, while the exterminator's motion repeated the grounds asserted in its Answer and, paralleling the hospital's defense of charitable immunity, advanced as an additional reason that as an agent of the hospital it too was entitled to the defense of charitable immunity. For reasons to be stated, we reverse the District Court's order entering judgment for the defendants and remand the case for further proceedings.

I

After a thorough review of the authorities and reasons underlying the doctrine of charitable immunity, a 4 to 3 majority of the Supreme Court of North Carolina, speaking through Justice Sharp in Rabon v. Rowan Memorial Hospital, Incorporated, 269 N.C. 1, 152 S.E.2d 485 (1967), overruled its long-standing doctrine of immunity insofar as charity hos-

---

1. Included in the contract specifications was a provision that "the pest control services contemplated by these specifica- tions shall include the following duties: (a) The control of rats and mice."

pitals, though not other charities, were concerned. Justice Sharp observed that the preexisting law of the state in regard to liability of charitable hospitals was that "a patient, paying or non-paying, who is injured by the negligence of an employee of a charitable hospital may recover damages from it only if it was negligent in the selection or retention of such employee" and "the fact that a charitable institution has procured liability insurance [does not] affect its immunity. Herndon v. Massey, 217 N.C. 610, 8 S.E. 2d 914." The newly announced rule, abolishing the immunity, is that a hospital "is liable for the negligence of its employees acting within the scope and course of their employment just as any other corporate employer."

The question requiring our decision is whether the plaintiff's cause of action, which arose before the *Rabon* decision, is barred by the doctrine of charitable immunity or whether it may be prosecuted to the extent that the defendant hospital's trust funds are protected by insurance against an adverse judgment. As stated, it has been stipulated that the defendant hospital's trust funds are in fact so protected.

■ We are of course obligated under Erie v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, and its progeny to decide the question as the Supreme Court of North Carolina would if confronted with the issue. In *Rabon* insurance was not involved, and the court was therefore not called upon to spell out with specificity the effect insurance would have on claims having an earlier origin but reaching the court later. Nor has the North Carolina court been presented with the question in any case subsequent to *Rabon*.[2] Our task therefore is to determine on the basis of relevant North Carolina authorities, although none is precisely in point, what the North Carolina court would hold if this case had reached that court instead.

We examine first *Rabon* and *Herndon* as obviously pertinent to the inquiry. In *Rabon*, the court declared that the immunity would no longer be available to hospitals in cases arising in the future. It stated:

> The rule of liability herein announced applies only to this case and to those causes of action arising after January 20, 1967, the filing date of this opinion. 152 S.E.2d at 499.

On the basis of this declaration of prospectivity, the hospital claims that *Rabon* has no effect on the law governing the plaintiff's action because the injury occurred before *Rabon* was decided. The hospital seeks to treat *Rabon* as without influence upon this cause of action although the litigation reached the courts after that decision. Under its theory, the rule of Herndon v. Massey that insurance does not affect the immunity is still in full force here, and hence the suit is barred.

We cannot agree that the North Carolina court would accord unabated validity to *Herndon* in a case like this. *Herndon* was decided in 1940 when the immunity stood in the courts of North Carolina as an impregnable barrier to recovery. *Rabon* created a breach in the wall of immunity, and a case reaching the North Carolina court thereafter would necessarily be affected by the dramatic change in public policy. It is not to be supposed that the North Carolina court would fail to take into account the underlying philosophy of its *Rabon* decision, which is to compensate those injured by the negligence of employees of charitable hospitals while at the same time safeguarding these institutions from the dissipation of trust funds in cases where, relying on the old rule, they had failed to provide themselves with liability insurance. That this is the underlying precept of *Rabon* is manifested by the court's refusal of full retroactive application of the new rule only after expressing concern over the

---

2. The recent decision of the Court of Appeals of North Carolina, Habuda v. Trustees of Rex Hospital, Inc., 164 S.E. 2d 17 (1968), although involving a cause of action arising prior to *Rabon*, did not present the question of the effect insurance might have on the availability of the immunity.

danger to the trust funds of inadequately insured hospitals. Surely this is a clear implication that the new rule of liability for employees' negligence should be operative where this hazard is not present.

Furthermore, the *Rabon* court stated that it was following the "procedure" in a number of named states in regard to application of the new rule. 152 S.E.2d at 499. Two of the states cited are Nebraska and Illinois, and we think it highly significant that the rule in both of those states as to causes of action arising prior to the abolition of the immunity is that the immunity is unavailable to the extent that the charity's trust funds are protected by insurance. Moore v. Moyle, 405 Ill. 455, 92 N.E.2d 81 (1950); Darling v. Charleston Community Memorial Hospital, 33 Ill.2d 326, 211 N.E.2d 253, 14 A.L.R.3d 860 (1965), cert. denied, 383 U.S. 946, 86 S.Ct. 1204, 16 L.Ed.2d 209; Myers v. Drozda, 180 Neb. 183, 141 N.W. 2d 852 (1966). By declaring a resolve to follow the rule in force in those states, the North Carolina court. sufficiently demonstrated its purpose to abrogate the immunity to the extent of insurance in cases arising before *Rabon*.[3]

█ To reach the opposite result would be to ascribe an indefensibly illogical design to the North Carolina court, and this we decline to do. The court has declared that the liability of charitable hospitals for the negligence of their employees is now favored and has indicated that the charity's trust funds should be protected as to past causes of action, either by liability insurance, if

this has been provided, or by continuing the immunity if the hospital has failed previously to provide itself with insurance protection.

█ It has intimated no intention to bestow a benefaction on insurers who have collected premiums for the very purpose of affording indemnity to injured persons while at the same time preserving the hospital's funds. Where the hospital has insured itself against the risk, the only possible beneficiary from preserving the immunity would not be the charitable hospital but the paid insurer. In these circumstances, we have no difficulty in concluding that the North Carolina court would no longer adhere to *Herndon*.

Accordingly, we hold that the defense of charitable immunity may not be asserted where there is insurance protecting the hospital's trust funds against an adverse judgment.

## II

█ The District Court's reason for entering judgment in favor of Orkin is not elucidated, but it appears that lack of privity was the basis of its decision. An examination of the North Carolina cases indicates that this defense is unavailable here.

The plaintiff predicates her action against Orkin on the alleged negligent performance of its service contract with the hospital, not upon breach of warranty.[4] A close analogy to the instant

---

3. Wisconsin was also cited in the *Rabon* opinion. In that state, the immunity was not affected by the fact that the hospital was insured prior to abolition of the immunity. Schau v. Morgan, 241 Wis. 334, 6 N.W.2d 212 (1942). Subsequent to the immunity's abrogation for hospitals in Kojis v. Doctors Hospital, 12 Wis.2d 367, 107 N.W.2d 121, 107 N.W.2d 292 (1962), the Wisconsin court has retreated from *Schau* and now adheres to the rule that purchase of insurance may waive the immunity, depending upon the terms of the policy. Koenig v. Milwaukee Blood Center, 23 Wis.2d 324, 127 N.W.2d 50 (1964). This

moderation of the rule of *Schau* subsequent to *Kojis* supports our view that the Supreme Court of North Carolina would hold that *Rabon* has impaired the holding of *Herndon*. *But see* Grant v. Cottage Hospital, 368 Mich. 77, 117 N.W.2d 90 (1962); Podvin v. St. Joseph Hospital, 369 Mich. 65, 119 N.W.2d 108 (1963).

4. Orkin's reliance on the defense of lack of privity is to some extent motivated by an erroneous failure to distinguish between negligence and breach of warranty actions. North Carolina does adhere to the privity requirement in the latter

case is an action upon manufacturers' liability, and it is settled that North Carolina no longer insists upon privity in negligence suits brought against manufacturers. In Corprew v. Geigy Chemical Corp., 271 N.C. 485, 157 S.E.2d 98, 106 (1967),[5] the Supreme Court of North Carolina announced:

> [T]he time has come for us to recognize that the exceptions to the general rule of non-liability of a manufacturer for negligence because of lack of privity of contract have so swallowed up the general rule of non-liability that such general rule for all practical purposes has ceased to exist. Its principle was unsound. It tended to produce unjust results. It has been abandoned by the great weight of authority elsewhere. We have abandoned it in this jurisdiction.

The question for us then is whether the North Carolina court would introduce a privity requirement in a negligence action resting upon a contract after utterly repudiating this requirement in the area of manufacturers' liability.

Orkin argues that the decision in Williams v. Charles Stores Co., 209 N.C. 591, 184 S.E. 496 (1936), supports its contention that the North Carolina court would hold privity a prerequisite to a tort action on a service contract. It is obvious, however, that the doctrine recognized in that case has no application here, because the plaintiff's action rests upon a showing of negligence in the performance of a continuing contract, not a completed and accepted contract.[6]

The legal principle which governs this case is expressed in § 324A of the Restatement Second of the Law of Torts. The section provides in part:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his fail-

type of suit. *E. g.*, Terry v. Double Cola Bottling Co., 263 N.C. 1, 138 S.E.2d 75 (1964); Wyatt v. North Carolina Equipment Co., 253 N.C. 355, 117 S.E.2d 21 (1960), and recognizes an exception in warranty actions where the manufactured article is packaged and a representation appears thereon. The rule in North Carolina in that situation is that the warranty is addressed to the ultimate consumer, and lack of privity will not defeat the consumer's action for breach of warranty. *E. g.*, Simpson v. American Oil Company, 217 N.C. 542, 8 S.E.2d 813 (1940) ; Corprew v. Geigy Chemical Corp., 271 N.C. 485, 157 S.E.2d 98 (1967).

5. In *Corprew*, the court held, *inter alia*, that allegations that defendant manufacturer had negligently failed to warn the plaintiff of the potentially harmful effects of its product and that this failure proximately resulted in the plaintiff's loss stated a valid cause of action despite lack of privity between the parties.

6. In *Williams*, employees of the defendant gas company negligently repaired a light fixture in a store. As a result a glass globe fell upon the plaintiff customer, who was not a party to the gas company's service contract with the pro-

prietor. The defendant argued that the "accepted work" doctrine barred the plaintiff's action. Under that doctrine, an independent contractor is not liable to third parties for injuries occurring subsequent to acceptance of the work by the contractor's employer. The North Carolina court rejected the defendant's contention, holding that the case fell into one of the recognized exceptions to the doctrine. The exception permits a third party to recover for injuries suffered after acceptance of the work if the contractor's negligence created a condition "imminently dangerous" to human life.

Orkin contends that the general rule, not the *Williams* exception, is applicable to this case, and that the plaintiff's action is therefore barred. The contention is based on the assumptions that the doctrine is pertinent here and that the presence of a rat on hospital premises does not constitute an "imminent danger." As we reject the first of these assumptions, the second need not be considered.

Nor is Orkin's reliance on Jones v. Otis Elevator Co., 231 N.C. 285, 56 S.E. 2d 684 (1949), well based, for in that case the North Carolina court was applying the substantive law of Virginia.

ure to exercise reasonable care to protect his undertaking, if

* * * * * *

(b) he has undertaken to perform a duty owed by the other to the third person,

* * * * * *.

It is clear that the defendant hospital was under a legal duty to exercise reasonable care in regard to the safety of its patients, and that under its contract with Orkin, the latter had undertaken to perform a certain aspect of this duty in the hospital's behalf. The above-quoted section squarely covers the instant case and renders the lack of privity defense unavailable to Orkin.[7]

Orkin's other contentions are also without merit.

■ It urges affirmance on the ground that the plaintiff's allegations and the undisputed facts demonstrate as a matter of law her contributory negligence or, alternatively, the absence of negligence on its part. The record, however, is manifestly deficient in this regard. No affidavits were filed by either party, and no stipulations were made in regard to Orkin's performance of its contract with the hospital or the reasonableness of the plaintiff's conduct upon being confronted by the rat. There is no basis, in these circumstances, for determining these issues on summary judgment as a matter of law.

■ Orkin's assertion that it may claim charitable immunity need not long detain us. It is a sufficient answer that the immunity, which we have held unavailable to the hospital to the extent of its insurance coverage, may in no event be asserted by a party other than the charitable institution.

### III

■ At oral argument, counsel for the plaintiff requested leave to amend the complaint to allege an additional

theory; namely, the hospital's negligence in selecting or retaining an incompetent agent or employee. Under North Carolina law, a charitable hospital was never immune from liability if the employee committing the wrongful act had been negligently selected or retained by the hospital.[8]

■ Since the case must be remanded, we think no hardship will result to the defendant hospital if the amendment is permitted.

Judgment for defendants vacated, and case remanded for further proceedings.

---

7. It appears that the North Carolina court applied the rule of § 324A in McIntyre v. Monarch Elevator & Machine Co., 230 N.C. 539, 54 S.E.2d 45 (1949).

8. Hoke v. Glenn, 167 N.C. 594, 83 S.E. 807 (1914); Habuda v. Trustees of Rex Hospital, Inc., 164 S.E.2d 17 (1968).