Phillip E. PETERS, Jr. b/n/f Phillip E. Peters, Sr., and Phillip E. Peters, Sr., Individually, Plaintiffs,

v.

Sam W. McCALLA, M. D. and Greenville Hospital System, Defendants.

Civ. A. No. 77–919.

United States District Court, D. South Carolina, Greenville Division.

Jan. 17, 1978.

Robert M. Ariail, Greenville, S. C., Paul M. Hawkins, A. Timothy Jones, Andrew M. Scherffius, III, Atlanta, Ga., for plaintiffs.

W. Francis Marion, G. Dewey Oxner, Jr., Greenville, S. C., for defendants.

## ORDER

CHAPMAN, District Judge.

This matter is before the Court on the motion of defendant, Greenville Hospital System (GHS), to dismiss plaintiffs' complaint, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, upon the ground that the complaint fails to state a claim upon which relief can be granted, because defendant GHS is immune from suit under the charitable immunity doctrine.

The complaint was filed on May 16, 1977, alleging negligence of both defendants in the treatment of plaintiff Peters, Jr. following knee surgery. Said negligent care allegedly resulted in plaintiff developing necrosis of the right leg which required the amputation of his right leg below the knee. Plaintiff Peters, Sr. seeks damages for medical expenses and the loss of services of his minor son, plaintiff Peters, Jr.

Defendant McCalla filed his answer at 8:39 a. m. on June 15, 1977, denying negligence or recklessness in any manner. Defendant GHS filed its motion to dismiss in lieu of answering. At 12:54 p. m. on the same date, plaintiffs filed amendments to their complaint alleging reckless and heedless conduct on the part of GHS in addition to the previously alleged negligence.

Defendant GHS bases its motion to dismiss on the case of *Brown v. Anderson County Hospital Association,* 268 S.C. 479, 234 S.E.2d 873 (1977), which holds in pertinent part as follows:

> The arguments advanced in favor of abolition of the doctrine of charitable immunity are not persuasive. Total abrogation of the doctrine would result in the failure to balance competing yet equally important interests of hospitals and of those persons who are the objects of the hospitals' torts. We, therefore, adopt an intermediate ground and hold that anyone injured through tortious acts of commission or omission of the agents, servants, employees or officers of a charitable hospital in this State may recover damages against such hospital, if the aggrieved party can establish that the injuries occurred because of the hospital's heedlessness and reckless disregard of the plaintiff's rights. This standard of proof is one which is higher than that of simple negligence. It parallels that standard of proof required under S.C.Code § 46–801 (1962), known popularly as the Automobile Guest Statute. Immunity fosters neglect and irresponsibility, while liability encourages the exercise of due care. This basic cornerstone of our common law system of jurisprudence is frustrated by total immunity.

> \*       \*       \*       \*       \*       \*

> We are aware that hospitals in this State have acted in reliance upon the old rule of charitable immunity and may not have taken steps to protect themselves with adequate liability insurance. Therefore, we follow the procedure of other states, such as North Carolina, and hold that the modification of the doctrine of charitable immunity, as set forth in this opinion, applies only to this case and to those causes of action arising after the filing of this opinion, May 10, 1977. See *Rabon v. Rowan Memorial Hospital, Inc.,* 269 N.C. 1, 152 S.E.2d 485 (1967).

It is obvious that plaintiffs' complaint was amended to conform with the higher level of tortious conduct (heedlessness and recklessness) required by *Brown* so as to allege a claim against a hospital. However, plaintiffs are still precluded from bringing suit against GHS because of the South Carolina Supreme Court's holding that the abrogation of charitable immunity for hospitals for heedless and reckless conduct applies only to those causes of action arising after May 10, 1977. Though plaintiffs in the instant case did not file their complaint until May 16, 1977, their cause of action, according to the complaint, arose in March 1973. Therefore, under the explicit holding of *Brown,* plaintiffs' cause of action against GHS must be dismissed.

In their memorandum in opposition to GHS's motion to dismiss, plaintiffs cite the case of *Hill v. James Walker Memorial Hospital,* 407 F.2d 1036 (4th Cir. 1969), which dealt with a similar prospective application holding by the Supreme Court of North Carolina in *Rabon v. Rowan Memorial Hospital, Inc.,* 269 N.C. 1, 152 S.E.2d 485 (1967), the case which abrogated charitable immunity for hospitals in North Carolina. In the *Hill* case, Judge Sobeloff posed the issue before the Court as follows:

> The question requiring our decision is whether the plaintiff's cause of action, which arose before the *Rabon* decision, is barred by the doctrine of charitable immunity or whether it may be prosecuted to the extent that the defendant hospital's trust funds are protected by insurance against an adverse judgment. As stated, it has been stipulated that the defendant hospital's trust funds are in fact so protected.

Confronting the Fourth Circuit in *Hill* was the case of *Herndon v. Massey,* 217 N.C. 610, 8 S.E.2d 914 (1940), which held, prior to *Rabon,* that the fact that a charitable institution has procured liability insurance does not affect its immunity. The Fourth Circuit stated that it could not agree with the hospital's contention that the North Carolina Supreme Court would continue to give credence to *Herndon* in light of the underlying philosophy of *Rabon* "to compensate those injured by the negligence of employees of charitable hospitals while at the same time safeguarding these institutions from the dissipation of trust funds in cases where, relying on the old rule, they had failed to provide themselves with liability insurance."

The Court continued as follows:

> That this is the underlying precept of *Rabon* is manifested by the court's refusal of full retroactive application of the new rule only after expressing concern over the danger to the trust funds of inadequately insured hospitals. Surely this is a clear implication that the new rule of liability for employees' negligence

should be operative where this hazard is not present.

\*   \*   \*   \*   \*   \*

> To reach the opposite result would be to ascribe an indefensibly illogical design to the North Carolina court, and this we decline to do. The court has declared that the liability of charitable hospitals for the negligence of their employees is now favored and has indicated that the charity's trust funds should be protected as to past causes of action, either by liability insurance, if this has been provided, or by continuing the immunity if the hospital has failed previously to provide itself with insurance protection.

> It has intimated no intention to bestow a benefaction on insurers who have collected premiums for the very purpose of affording indemnity to injured persons while at the same time preserving the hospital's funds. Where the hospital has insured itself against the risk, the only possible beneficiary from preserving the immunity would not be the charitable hospital but the paid insurer. In these circumstances, we have no difficulty in concluding that the North Carolina court would no longer adhere to *Herndon.*

> Accordingly, we hold that the defense of charitable immunity may not be asserted where there is insurance protecting the hospital's trust funds against an adverse judgment.

The Supreme Court of South Carolina was confronted with the *Herndon* issue as recently as 1966 in the case of *Decker v. Bishop of Charleston,* 247 S.C. 317, 147 S.E.2d 264 (1966), and the Court, after reaffirming the doctrine of charitable immunity, held as follows:

> It is our conclusion that the procurement by a charitable organization of liability insurance does not create liability in instances in which such organization is immune from liability. We think this is sound in principle and is supported by the weight of authority.

▮ It is the opinion of this Court that the holding in *Decker* still inures to the benefit of GHS in South Carolina in the

present case despite the holding of the Fourth Circuit in *Hill* as to what it felt the Supreme Court of North Carolina *would* do if confronted with the issue.[1] The *Decker* case states "that the procurement by a charitable organization of liability insurance does not create liability *in instances in which such organization is immune from liability.*" The Supreme Court of South Carolina in *Brown* held "that the modification of the doctrine of charitable immunity, as set forth in this opinion, applies only to this case and to those causes of action arising after the filing of this opinion, May 10, 1977." The unequivocal language of *Brown* gives GHS immunity, since the cause of action arose prior to May 10, 1977, and thus the fact that it may have liability insurance is of no moment since insurance "does not create liability in instances in which such organization is immune from liability."

Moreover, the Supreme Court's decision in *Brown* came down over seven years after the *Hill* decision. The *Brown* decision tracks very closely the *Rabon* case at several points, and since *Hill* expands the parameters of *Rabon,* this Court must assume that the South Carolina Supreme Court fully considered *Hill* and the issue it decided. This Court, under *Erie Railroad Company v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, cannot attribute an expanded holding to the South Carolina Supreme Court when that court so recently spoke to the issue and declined to limit its prospective application holding. Furthermore, the legislature of this State enacted legislation, approved by the Governor on June 10, 1977 (one month after *Brown* ), dealing with the very same issue of charitable immunity as related to hospitals. This Act[2] modified *Brown* by allowing a person to bring suit against a hospital for injury or death by reason of the "tortious act" of a hospital and allowing recovery "for such actual damages as he may sustain a sum not exceeding one hundred thousand dollars."

This Act (No. 182 of 1977) passed the House of Representatives on May 4, 1977; it passed the Senate with amendments on June 2, 1977; the House concurred in the Senate amendments on June 3, 1977; it was ratified on June 7, 1977; and, as stated, it was signed by the Governor on June 10, 1977. Section 3 of the Act reads as follows:

Charitable and sovereign immunity.

Section 3. The doctrines of charitable and sovereign immunity as they relate to hospitals and other medical facilities in this State are hereby modified to the extent that any person sustaining an injury or dying by reason of the tortious act of commission or omission of agents, servants, employees or officers of a charitable hospital or medical facility or of a hospital or other medical facility operated or funded by the State, its agencies, departments, institutions, commissions, boards or political subdivisions may recover in any action brought against such hospital or other medical facility for such actual damages as he may sustain a sum not exceeding one hundred thousand dollars. Except as to licensed physicians and dentists, the judgment in an action under this section shall constitute a complete bar to any action by the claimant, by reason of the same subject matter, against the employee of the charitable or governmental entity whose act or omission gave rise to the claim; and a plaintiff, when bringing an action under the provisions of this section, shall only name as a party defendant the entity for which the employee was acting and shall not name the employee individually unless the entity for which the employee was acting cannot be determined at the time the action is instituted. In the event the employee is individually named under the conditions permitted above, the entity for which the employee was acting shall be substituted as the party defendant when it can be so reasonably determined. The provisions of this section shall in no way limit or modify the liability of a licensed physician or dentist.

---

1. *Herndon* was decided 29 years before *Hill.* *Decker* was decided only 11 years prior to *Brown.*

2. Act 182 of 1977.

It seems clear that the legislature modified *Brown* by lowering the degree of misconduct required to state a claim from recklessness and heedlessness to the degree of misconduct required to invoke that misconduct's denomination as a tortious act, which by its very definition includes simple negligence. As a compromise to this lower standard, the legislature acted to limit recovery to actual damages of $100,000. At the same time that the legislature was considering these modifications, it could, had it so desired, modified *Brown* in the manner that *Hill* modified *Rabon*. It chose not to do so. Therefore this Court need not project as the Fourth Circuit in *Hill* was forced to project. Both the Supreme Court and the legislature of this State have been active in the area presented by this case and did not choose to make the cause of action created by *Brown* retroactive.[3] This Court cannot now act in a way that those bodies chose not to act.

Furthermore, Section 2 of Act 182 of 1977 reads as follows:

Actions for medical malpractice—statute of limitations

Section 2. The 1962 Code is amended by adding Section 10-145.1 to read:

"Section 10-145.1. Any action to recover damages for injury to the person arising out of any medical, surgical or dental treatment, omission or operation by any licensed health care provider as defined in Act 674 of 1976 shall be commenced within three years from the date of the treatment, omission or operation giving rise to the cause of action or three years from date of discovery or when it reasonably ought to have been discovered, not to exceed six years from date of occurrence. When the action is for damages arising out of the placement and inadvertent, accidental or unintentional leaving of a foreign object in the body or person of any one or the negligent placement of any appliance or apparatus in or upon any such person by any licensed health care provider by reason of any

medical, surgical or dental treatment or operation, such action shall be commenced within two years from date of discovery or when it reasonably ought to have been discovered; *provided, however, that the provisions of this section shall apply only to causes of action which arise after the effective date of this act and, as to causes of action which arise prior to the effective date of this act, the statute of limitations existing prior to the effective date of this act shall apply."* [Emphasis added]

Section 1 of Act 674 of 1976 (§ 38-59-110 of the Code of Laws of South Carolina 1976) defines "licensed health care providers" to include "physicians and surgeons; nurses; oral surgeons; dentists; pharmacists; chiropractors; *hospitals*; nursing homes; or any similar major category of licensed health care providers." [Emphasis added]. As quoted above, the *proviso* of Section 2 of Act 182 of 1977 limits the application of the lowered statute of limitations "to causes of action which arise after the effective date of this act . . . ." Therefore, this Court could not employ the lower statute of limitations of Section 2 of Act 182 to dismiss the present plaintiffs' cause of action even though the complaint was filed over four years from the date of treatment that gave rise to the cause of action and over four years from the date of discovery. Likewise, this Court cannot fly in the face of the prospective application holding of the *Brown* case and hold that GHS is not immune from suit in the instant case. To do so would create the anomalous result of holding that the same words in a statute and in a case mean two different things. This Court will not interpret and apply the law in such an inconsistent and arbitrary fashion.

Finally, in plaintiffs' memorandum in opposition to GHS's motion to dismiss, plaintiffs quote at length from the dissenting opinion of Justice Ness in *Brown*. One pertinent passage reads as follows:

---

**3.** Certainly with the great number of *Amicus Curiae* briefs filed with the South Carolina Supreme Court in *Brown*, that court understood the holding and the sequence of *Herndon, Rabon* and *Hill*.

The primary source of funds for hospitals is insurance. It is estimated that more than 70% of its charges are paid by insurance benefits. Another type of insurance makes the doctrine even more unrealistic. Liability insurance is available at reasonable rates. The effect of this cost would not deplete the funds of the hospital, in fact, it could be passed on as patient costs. Some hospitals, in anticipation of the day when they will not have this cloak of immunity, now carry insurance.

The relevant sentence for this discussion is, "Liability insurance is available at reasonable rates." Surely, many hospitals have previously secured liability insurance and have probably done so at "reasonable rates". But it is the view of this Court that these "reasonable rates" have been possible due to the doctrine of charitable immunity. One would have to ignore the realities of the world of business and commerce to suggest that these reasonable rates will not skyrocket with the fall of the doctrine of charitable immunity.[4] There is no better example of what the hospitals of this state can expect to occur in regard to their insurance rates than the tremendous rise in cost of medical malpractice insurance for doctors over the past several years in response to the increased number of malpractice claims brought in the courts of this state. Plaintiffs state in their memorandum that, "as emphasized in the *Hill* case, the *only* beneficiary of prospective application of the *Brown* doctrine, so as to deny the minor plaintiff Peters' cause of action against the hospital, would be the liability insurance carrier and not the hospital system." It is more accurate to state that the insurance carrier, through prospective application, will be allowed the opportunity to adjust its rates to maintain its *present* financial integrity so as not to be overwhelmed with liability claims for which premiums have not been collected, than to say that it will be a beneficiary of prospective application. In other words, it is more accurate to state that the *Brown* case, by prospective application, will not work to the detriment of insurance carriers than to state that the carriers will be the beneficiaries (which implies a positive gain) of prospective application.

By way of conclusion, plaintiffs have requested, should this Court disagree with their contentions, that this Court stay entry of its Order until discovery can be had to "review the applicable policy of insurance to determine whether the hospital system has waived its claims to charitable immunity through its insurance contract with its insurance carrier. That is, it may well be that the policy stipulates that the hospital will not raise the defense of charitable immunity in such situations where the policy coverages are applicable." The frivolity of this request is obvious. Every policy of insurance, that this Court has ever considered, that mentions defenses, stipulates that if the insured waives a valid defense, it will lose coverage. Certainly no carrier would stipulate to a waiver of a valid defense. Moreover, even if this Court is wrong as to waiver of defenses, this Court's holding that the possession of liability insurance coverage is of no moment in regard to the prospective application of *Brown,* makes this request by plaintiffs moot.

Finally, in a last ditch effort to counter the clear language of *Brown,* plaintiffs submit that an Order adverse to their position by this Court, holding that *Brown* applies prospectively, would deprive plaintiffs of due process under the Fifth and Fourteenth Amendments. This contention deserves short shrift in view of the fact that plaintiffs could not be deprived of their rights in this matter when they had no cause of action to start with.

For the foregoing reasons, defendant GHS's motion to dismiss is hereby granted. Plaintiffs' complaint against defendant GHS is hereby dismissed.

AND IT IS SO ORDERED.

---

4. The South Carolina Legislature obviously realized this in setting the $100,000.00 limit on verdicts with the passed Act 182 of 1977.