**Elaine ROSENTHAL, as Executrix of the Estate of Martin C. Rosenthal, Deceased, Plaintiff,**

v.

**Kenneth W. WARREN and New England Baptist Hospital, Defendants.**

No. 71 Civ. 697.

United States District Court, S. D. New York.

April 15, 1974.

Kreindler & Kreindler, New York City (Gerald A. Robbie, Alan J. Konigsberg, New York City, of counsel), for plaintiff.

Morris, Duffy, Ivone & Jensen, New York City (Richard J. Burke, New York City, of counsel), for defendant, New England Baptist Hospital.

BAUMAN, District Judge.

The motion before the court presents the following difficult, and at once intriguing question: would New York apply the Massachusetts doctrine of charitable immunity in a wrongful death action, brought by a New York decedent's estate, to recover damages for alleged medical malpractice in Massachusetts by residents of that state. Defendant, New England Baptist Hospital (hereinafter "the Hospital"), a Massachusetts charitable corporation, has asserted this doctrine as an affirmative defense. I am now confronted with plaintiff's motion to strike.

I.

The relevant facts are not disputed. Decedent, a New York physician, traveled to Boston for medical examination and diagnosis by defendant Warren, subsequent to which he entered the Hospital for surgery. On March 27, 1969, eight days after the operation performed by Dr. Warren, Rosenthal died.

Plaintiff, decedent's executrix, sued Dr. Warren and the Hospital in the state courts of New York, alleging malpractice and seeking damages in the amount of $1,250,000. Based on diversi-

ty the action was properly removed to this court.

Defendants initially attempted to avail themselves of the Massachusetts wrongful death statute which limits recoverable damages in such actions to " . . . not less than five thousand, nor more than fifty thousand dollars".[1] Judge Croake granted plaintiff's motion to strike this affirmative defense on the ground that the New York courts,[2] faced with such a fact situation, would apply New York law which places no limitation on recoverable damages in such cases.[3] Rosenthal v. Warren, 342 F. Supp. 246 (S.D.N.Y.1972). This ruling was appealed, prior to final judgment, to our Court of Appeals pursuant to 28 U. S.C. § 1292(b) where the majority, in affirming, held that under New York choice of law rules, the Massachusetts law would not be applied to limit recoverable damages. 475 F.2d 438 (2d Cir. 1973).[4] Having concluded that New York follows an "interest analysis" approach,[5] Judge Oakes formulated the test to be applied:

" . . . as we view it, the New York courts would balance against the New York interest in protecting its domiciliaries against wrongful death limitations the interest of Massachusetts in limiting damages for wrongful deaths allegedly caused by Massachusetts citizens or occurring in Massachusetts." Rosenthal v. Warren, 475 F.2d at 444.

Following a thorough examination of New York law on the subject of limitation of damages in wrongful death actions the court concluded:

"In any event it is our considered view that the New York Court of Appeals would view the Massachusetts limitation . . . as so 'absurd and unjust' that the New York policy of fully compensating the harm from wrongful death would outweigh any interest Massachusetts has in keeping down in this limited type of situation the size of the verdict . . . . Thus the anachronistic concept embodied in the Massachusetts act is hardly one that the New York courts can be expected to embrace in the case of the death of a New York domiciliary with whose wife and children New York is vitally concerned. [citation omitted]. The New York policy favors 'a just recovery' and 'principles of fair play' [citation omitted] . . . which would not be furthered by applying the idiosyncratic Massachusetts law here. Our educated guess as to what the New York courts would do is to . . . apply the New York law of damages." Id. at 445–446.

The case thereafter appeared on my docket for trial,[6] and I permitted the Hospital to amend its answer in order to plead the defense of charitable immunity under Massachusetts law which plaintiff now moves to strike.[7]

■ Obviously the key issue here is whether the Court of Appeals' decision

1. Mass.Gen.L. ch. 229 § 2 (1959).

2. It is, of course, settled that in a diversity case the federal court must look to the choice of law rules of the forum state, in this case New York. Klaxon Co. v. Stentor Electric Manufacturing Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941).

3. N.Y. Estates, Powers and Trust Law, McKinney's Consol.Laws, c. 17–b, § 5–4.3; New York Constitution, art. 1, sec. 16.

4. The Supreme Court thereafter denied certiorari. 414 U.S. 856, 94 S.Ct. 159, 38 L. Ed.2d 106 (1973).

5. Such an approach looks to the "the law of the jurisdiction which, because of its rela-

tionship or contact with the occurrence or the parties has the greatest concern with the specific issue raised in the litigation." Babcock v. Jackson, 12 N.Y.2d 473, 481, 240 N.Y.S.2d 743, 749, 191 N.E.2d 279 (1963).

6. Judge Croake originally heard the case while sitting in Motion Part prior to the institution of the Southern District's present assignment system. Upon adoption of that system the case was permanently assigned to me.

7. Permission to amend the answer was granted without passing upon the merits of such defense.

in *Rosenthal,* regarding the inapplicability of the Massachusetts wrongful death recovery limitation, compels the same decision with respect to the charitable immunity defense. The resolution of this vexing question requires a careful scrutiny of the factors considered decisive by that court, as well as a re-examination of New York law in view of the different public policy considerations presented here.

No New York decision dealing with the charitable immunity doctrine of a foreign state has reached the choice of law question since the rejection of the rigid *lex loci delicti* approach by Babcock v. Jackson, 12 N.Y.2d 473, 240 N. Y.S.2d 743, 191 N.E.2d 279 (1963).[8] What faces me then, is a question not previously addressed by this court, the New York Court of Appeals or the Second Circuit.

## II.

New York's "interest analysis" approach to choice of law problems was first enunciated by Judge Fuld in Babcock v. Jackson, supra, which sounded the death knell of the rigid rule that the law of the place of the tort inevitably governs. Looking toward achieving "justice, fairness and the best practical result" the New York Court of Appeals directed that courts give "controlling effect to the law of the jurisdiction which, because of its relationship or contact with the occurrence or the parties has the greatest concern with the specific issue raised in the litigation." [9] As it went on to say "the merit of such a rule is that it gives to the place having *the most interest* in the problem paramount control over the legal issues arising out of a particular factual context." [10]

Accordingly analysis of the instant case must begin with an examination of the comparative interests of the states involved.

It cannot be gainsaid, as Judge Oakes wrote in this very case, that New York has a very substantial interest here:

> "New York has a significant interest —its domiciliary is the one who died and his next of kin are New York's charges—and the 'incident' in Massachusetts is not purely 'a local one' [citation omitted] since the decedent was from out of state, and the defendant hospital is a national one in terms of its patients, its staff, its reputation and its efforts to obtain out-of-state contributions." Rosenthal v. Warren, 475 F.2d at 446.

Additionally, the New York courts have stressed the state's deep interest in protecting its citizens injured in a foreign state against unfair, anachronistic, or archaic doctrines. Neumeier v. Kuehner, 31 N.Y.2d 121, 125, 335 N.Y. S.2d 64, 286 N.E.2d 454 (1972). One is hard pressed to conceive of a more fitting rubric for the doctrine of charitable immunity.

Charitable immunity, completely a creature of common law in Massachusetts, was adopted by the Supreme Court of that state in McDonald v. Massachusetts General Hospital, 120 Mass. 432 (1876), in reliance upon an earlier English case, Holliday v. St. Leonard, (1861) 11 C.B. (N.S.) 192, 142 Eng. Rep. 76988, a decision that was repudiated in England soon after.[11] The archaic nature of the doctrine is nowhere more starkly revealed than in the "public policy" rationale for its adoption explored at length in Powers v. Massa-

---

8. The fact that Klaxon Co. v. Stentor Electric Manufacturing Co., 313 U.S. 487, 61 S. Ct. 1020, 85 L.Ed. 1477 (1941), requires me to look to the choice of law rules of New York, the forum state, makes the resolution of the problem here all the more difficult in light of the lack of precedent.

9. 12 N.Y.2d at 481, 240 N.Y.S.2d at 749, 191 N.E.2d at 283.

10. *Id.* at 481, 240 N.Y.S.2d at 747, 191 N.E. 2d at 283 [Emphasis added].

11. See 25 A.L.R.2d 29, 38.

chusetts Homœopathic Hospital, 109 F. 294 (1st Cir. 1901):

> " . . . it would be intolerable that a good Samaritan, who takes to his home a wounded stranger for surgical care, should be held personally liable for the negligence of his servant in caring for that stranger. Were the heart and means of that Samaritan so large that he was able, not only to provide for one wounded man, but to establish a hospital for the care of a thousand, it would be no less intolerable that he should be held personally liable for the negligence of his servant in caring for any one of those thousand wounded men. . . . if a suffering man avails himself of their charity, he takes the risk of malpractice. . . ." *Id.* at 304.

More than fifteen years ago the charitable immunity doctrine met its death in New York at the hands of its Court of Appeals which held that it was "out of tune with the life about us, *at variance with modern day needs and with the concept of justice and fair dealings.*" Bing v. Thunig, 2 N.Y.2d 656, 163 N.Y. S.2d 3, 143 N.E.2d 3 (1957).[12] In a more recent case, involving highly analogous public policy considerations, the same court used strikingly similar language in refusing to apply Massachusetts' wrongful death recovery limita-

tions to an accident occurring in that state. Kilberg v. Northeast Airlines, 9 N.Y.2d 34, 40, 211 N.Y.S.2d 133, 172 N. E.2d 526 (1961).[13] This led Judge Oakes in *Rosenthal* to conclude that "the New York policy of fully compensating the harm [*to its domiciliaries*][14] from wrongful death would outweigh any interest Massachusetts has in keeping down . . . . the size of verdicts."[15]

Recognizing the fact that New York's interest in protecting its citizens here is identical to that involved in *Rosenthal*, I further conclude that the high court of that state would rule no differently with respect to charitable immunity than it did with wrongful death recovery limitations: that it is unfair, out of step with the times and abhorrent to the public policy embodied in Article 1, § 16 of the New York Constitution.[16]

New York is, of course, "vitally concerned with the manner in which the wife and children of a New York decedent will be compensated . . . as a result of the wrongful killing of their breadwinner." Miller v. Miller, 22 N.Y. 2d 12, 18, 290 N.Y.S.2d 734, 739, 237 N. E.2d 877, 880 (1968). Any doctrine as archaic as this one,[17] founded on medieval views of charity, harshly criticized by virtually all the commentators,[18] and abolished judicially or by legislative act in all but three or four states,[19] belongs

---

12. Emphasis added.

13. The court in *Kilberg*, admitting that the New York legislature itself had imposed such limits in the late nineteenth century, nevertheless held: "The absurdity and injustice have become increasingly apparent in the six decades that have followed. For our courts to be limited by this damage ceiling (at least as to our own domiciliaries) is so completely contrary to our public policy that we should refuse to apply that part of the Massachusetts law." 9 N.Y.2d at 40, 211 N.Y.S.2d at 136, 172 N.E.2d at 528.

14. Dr. Rosenthal was a New York resident as are his widow and children.

15. Rosenthal v. Warren, 475 F.2d at 445 (1973).

16. Article 1 § 16 provides in pertinent part: "The right of action now existing to re-

cover damages for injuries resulting in death, shall never be abrogated . . . ."

17. The charitable immunity doctrine was designed, in part, to protect the assets of charitable trusts from dissipation by the "hungry maw of litigation," thus conserving them for the benefit of the many rather than the compensation of the few. Ettlinger v. Trustees of Randolph-Macon College, 31 F.2d 869 (4th Cir. 1929). Today such a policy decision is no longer necessary. The advent of widespread insurance has made possible the full compensation of the injured without any significant diminution of the charitable funds.

18. Prosser, Hornbook on Torts, (4th Ed.) at 994.

19. See Colby v. Carney Hospital, 356 Mass. 527, 254 N.E.2d 407 (1969); Garlington v. Kingsley, La., 289 So.2d 88 (1974).

to the scholars who concern themselves with antiquity and does nothing but violence to New York's expressed vital interest in the compensation of its domiciliaries.[20]

I find no binding precedent for this determination. Although I am aware of Kaufman v. American Youth Hostels, 6 A.D.2d 223, 177 N.Y.S.2d 587 (2d Dept. 1958), in which the Appellate Division, Second Department, applied the Oregon charitable immunity doctrine to an accident which occurred there,[21] that case was decided prior to Babcock v. Jackson,[22] supra, and the court clearly felt constrained to apply the wooden *lex loci delicti* doctrine which *Babcock* and its progeny effectively destroyed.[23] Faced, therefore, with a question of first impression, I am led to conclude, for all the above reasons, that the courts of New York would find the charitable immunity doctrine asserted by the defendant as objectionable to public policy as a statutory limitation on wrongful death damages.

### III.

In contrast to New York, Massachusetts' interest here is minimal. While it is true that Massachusetts was the situs of the alleged tort, and is the residence of the defendants, these factors diminish in significance in light of (1) the nature of the activity involved; (2) that state's *present* attitude respecting the doctrine; and (3) the insured status of the Hospital.

It is clear, as expressed in *Rosenthal*, that the Court of Appeals of this Circuit regards the incident in Massachusetts as not purely local "since the decedent was from out of state, and the defendant hospital is a national one in terms of its patients, its staff, its reputation and its efforts to obtain out-of-state contributions." [24]

Furthermore, Massachusetts has no *current* interest in perpetuating the doctrine of charitable immunity, having itself abolished it. Its emergence into the twentieth century on this issue was presaged by Colby v. Carney Hospital, 356 Mass. 527, 254 N.E.2d 407 (1969). There the Supreme Judicial Court, although stating a preference for legislative action, nevertheless took the occasion to put all on notice "that the next time we are squarely confronted by a legal question respecting the charitable immunity doctrine it is our intention to abolish it." Thus prompted, the Massachusetts legislature in December 1971 passed § 85k of chapter 231 of the General Rules of Massachusettts abolishing charitable immunity.[25]

---

20. Bing v. Thunig, 2 N.Y.2d 656, 163 N.Y.S. 2d 3, 143 N.E.2d 3 (1957).

21. While the opinion makes clear that the defendant in the case was a New York domiciliary, there is no mention of plaintiff's domicile.

22. In the only post-*Babcock* decision on the subject, the Appellate Division, Second Department, faced with a case arising out of the same accident as *Kaufman*, took judicial notice of Oregon's repeal of the charitable immunity doctrine, and found "no need" to determine whether *Babcock* changed the rule in *Kaufman*. There was no discussion of the question of the retroactivity of the Oregon statute which was repealed after the accident in question. Blum v. American Youth Hostels, Inc., 21 A.D.2d 683, 250 N.Y.S.2d 522 (2d Dept. 1964). Parenthetically, the trial court in *Blum* had held that "Babcock v. Jackson, supra, changed the rule of law upon which the decision in *Kaufman*

. . . was based" and therefore called for a different resolution of the choice of law problem. 40 Misc.2d 1056, 244 N.Y.S.2d 351 (Sup.Ct., Kings Co. 1963).

23. The court in *Kaufman* concluded that "the sufficiency of the first defense [charitable immunity] must be determined according to the law of Oregon, since it is the law of the place where the alleged tortious wrong was committed that governs the question of whether the actor is liable." *Id.* 6 A.D.2d at 225, 177 N.Y.S.2d at 589.

24. *Rosenthal* 475 F.2d at 446. The court notes that approximately one-third of the Hospital's patients come from outside the state. The Hospital itself claims in its annual report that it is "not a local or community hospital in the usual sense because its patients come from literally everywhere."

25. Section 85k provides in pertinent part: "It shall not constitute a defense to any cause of action based on tort brought

The abrogation of this doctrine, defendant contends, should play no part in my consideration in light of recent decisions, state and federal, which hold the repeal to operate prospectively only. See Ricker v. Northeastern Univ., Mass., 279 N.E.2d 671 (1972); Trala v. Shea, 335 F.Supp. 81 (D.Mass.1971). The argument is not persuasive. This court is not giving retroactive effect to the legislative action. I do, however, deem the statute an effective indication of the contemporary attitude of Massachusetts toward charitable immunity. As such, it surely would receive great weight in the courts of New York when considering the minimal Massachusetts interest in the current litigation and in concluding, as I do, that such interest is one based not on logic, reason or social policy, but instead on the vestigial remains of a moribund doctrine. Rosenthal v. Warren, supra, 475 F.2d at 445.

Miller v. Miller, 22 N.Y.2d 12, 290 N.Y.S.2d 734, 237 N.E.2d 877 (1968), is directly on point here. There, a New York domiciliary sued a resident of Maine for wrongful death which resulted from an automobile accident in the latter state at a time when a $20,000 recovery limitation existed there. The New York Court of Appeals considered the fact that Maine subsequently repealed the limitation, although recognizing in a footnote that Maine would not give the repeal retroactive effect. Concluding that New York had the greater interest in the litigation, the court went on to say:

"Any claim that Maine has a paternalistic interest in protecting its resi-

against a corporation . . . that said corporation . . . is or at the time the cause of action arose was a charity; provided, that if the tort was committed in the course of any activity carried on to accomplish directly the charitable purposes of such corporation . . . liability in any such cause of action shall not exceed the sum of twenty thousand dollars."
The limitation on recovery that appears in the latter half of the statute has no relevance to the court for the following reasons: (a) since the holding of this court is that Massachusetts law does *not* apply, the limi-

dents against liability for acts committed while they were in Maine . . . ignores the fact that *for the very same acts committed today* Maine would now impose the same liability as New York." *Id.*, at 21–22, 290 N.Y.S.2d at 742, 237 N.E.2d at 882 [Emphasis added].

It is conceded that Massachusetts has expressed an "interest" in preserving charitable immunity for actions occurring there *prior* to the enactment of § 85k. See Ricker v. Northeastern Univ., supra; Trala v. Shea, supra. The considerations which formed the basis for such an interest, however, are not present in the case at bar.

The *Colby* court's decision not to repeal the doctrine at that point in time was designed to give "notice to charitable corporations conducting operations in Massachusetts of the advisability of insurance against possible tort liabilities." [26] Likewise, the decisions in *Ricker* and *Trala* to deny retroactive application of § 85k were clearly designed to protect the assets of those charitable institutions that had *relied* on their previous immunity. In neither case does it appear that the defendant hospital had liability insurance. In *Trala*, Judge Wyzanski, admitting that his decision not to apply the legislative repeal retroactively worked inequity, hardship and injustice, nevertheless felt that it was "inconsistent with the long maintained . . . policies of . . . Massachusetts to permit assets acquired by a charity . . . to be used for compensating victims of the charity's torts." [27] "Retroactive application of the new principle imposing liability," he con-

tation likewise does not apply, (b) the limitation was not in effect at the time of the accident and (c) the court's decision in *Rosenthal* specifically held that limitations of recoverable damages in wrongful death actions clearly violate New York public policy and will not be applied by the courts of that state.

26. Ricker v. Northeastern University, 279 N.E.2d 671, 672 (Mass.1972).

27. Trala v. Shea, 335 F.Supp. 81, 82 (D. Mass.1971).

tinued, "would mean in practice that many charities would not have been seasonably apprized of the economic need for insurance against the risks to which they have been newly subjected." [28] *This is not the case here.* Defendant Hospital carried liability insurance during the period in which the decedent was treated in its facility.[29] The clear implication of Judge Wyzanski's language in *Trala* is that, given an insured defendant, Massachusetts would no longer have any "interest" in denying retroactivity.

The Fourth Circuit Court of Appeals was recently faced with a similar situation in Hill v. James Walker Memorial Hospital, 407 F.2d 1036 (4th Cir. 1969).[30] In a diversity case, where North Carolina law clearly applied, the defendant hospital asserted the defense of that state's charitable immunity doctrine. Although North Carolina had abolished the doctrine insofar as charitable hospitals were concerned, the action before the court arose before the effective date of the repeal and the only state court decisions on point held that it was not to be applied retroactively.[31] Judge Sobeloff met the problem with his unique wisdom and insight. Noting that the defendant hospital had complete liability insurance at the time of the accident,[32] he concluded that the state court's decisions denying retroactivity would not be applicable to such a case:

> "To reach the opposite result would be to ascribe an indefensibly illogical design to the North Carolina court. . . . The court has declared that the liability of charitable hospitals for the negligence of their employees is now favored and has indicated that the charity's trust fund should be protected as to past causes of action, either by liability insurance, if this has been provided, or by continuing the immunity if the hospital has failed previously to protect itself with insurance protection. . . . Accordingly, we hold that the defense of charitable immunity may not be asserted where there is insurance protecting the hospital's trust fund against an adverse judgment." *Id.*, at 1040.[33]

No case has come to the attention of this court holding insurance companies to be eleemosynary institutions and the Massachusetts courts have intimated no intention of bestowing a benefaction on insurers who have been paid for the purpose of affording indemnity to injured persons while at the same time preserving the hospitals' funds.[34] As Judge Sobeloff so cogently said: "Where the hospital has insured itself against the risk, the only possible bene-

28. *Id.*, at 82.

29. Dr. Warren was insured as well, although this plays no part in my decision.

30. *Hill*, however, involved no choice of law question. The sole issue faced by the court was whether to give retroactive effect to the North Carolina abolition of the charitable immunity doctrine.

31. Rabon v. Rowan Memorial Hospital Inc., 269 N.C. 1, 152 S.E.2d 485 (1967); Habuda v. Trustees of Rex Hospital, 3 N.C.App. 11, 164 S.E.2d 17 (1968).

32. In *Rabon* and *Habuda* insurance was not involved and neither court was called upon the spell out the effect insurance would have on claims having an origin prior to the date of repeal.

33. Other courts concluding that a prospective repeal of charitable immunity would be applied retroactively in the case of an insured defendant are: Darling v. Charleston Community Memorial Hospital, 33 Ill.2d 326, 211 N.E.2d 253 (1965), cert. denied, 383 U.S. 946, 86 S.Ct. 1204, 16 L.Ed.2d 209 (1966); Myers v. Drozda, 180 Neb. 183, 141 N.W.2d 852 (1966); Koenig v. Milwaukee Blood Center, 23 Wis.2d 324, 127 N.W.2d 50 (1964).

34. Enman v. Trustees of Boston University, 270 Mass. 299, 170 N.E 43 (1930) and McKay v. Morgan Memorial, 272 Mass. 121, 172 N.E. 68 (1930) cited by defendant for the proposition that insurance should not be considered in connection with the defense of charitable immunity are not persuasive because (a) they are pre-repeal cases, (b) they are over forty years old and reflect policies not in step with current thinking in Massachusetts, and (c) I consider the matter of insurance only for purposes of evaluating Massachusetts' interest and not for determining Massachusetts law.

ficiary from preserving the immunity would not be the charitable hospital, but the paid insurer." [35]

It appears certain that the underlying philosophy behind Massachusetts adoption of § 85k was to compensate those injured by the negligence of employees of charitable hospitals. At the same time the philosophy behind the denial of retroactivity to this statute was to safeguard these institutions from the dissipation of trust funds in cases where, relying on the old rule, they had failed to provide themselves with liability insurance. While I shall not speculate as to what the Massachusetts' courts would hold if this case had reached them instead of me, it is utterly clear that applying the New York law on this issue does complete justice to both of these Massachusetts aims. I therefore conclude that the Massachusetts' interest in preserving immunity in the case before me is so minute that the New York courts would find it totally outweighed by its own.

### IV.

Defendant raises several additional points in its brief which are worthy of careful, although not necessarily lengthy consideration.

First, defendant contends that, while the Massachusetts wrongful death statute dealt only with the "amount" of damages recoverable, the charitable immunity doctrine goes to the very question of "liability". On this basis, it is argued, the Court of Appeals decision in *Rosenthal* is distinguishable. I do not agree. The New York courts do not make the distinction urged by defendants and there is no reason why I should do so. Babcock v. Jackson, supra, the backbone of New York's interest analy-

sis approach, itself involved a statute which precluded rather than limited liability.

Defendant next contends that the decision of our Court of Appeals in Pryor v. Swarner, 445 F.2d 1272 (2d Cir. 1971), controls the case at bar. This presents a problem not capable of easy resolution.

*Pryor* held that where a New York resident was injured in an Ohio automobile accident, while riding as a guest-passenger in an automobile registered and insured in Florida, and where both Ohio and Florida had guest statutes barring recovery by a guest against his host for "simple negligence", New York would not apply its own law allowing recovery for "simple negligence". This case seems in accordance with Judge Fuld's Rule #2 in Neumeier v. Keuhner,[36] supra:

"When the drivers conduct occurred in the state of his domicile and that state does not cast him in liability for that conduct, he should not be held liable by reason of the fact that liability would be imposed upon him under the tort law of the state of the victim's domicile." 31 N.Y.2d at 128, 335 N. Y.S.2d at 70, 286 N.E.2d at 457.

Although the Hospital acknowledges that *Pryor* is distinguishable in that it involved a guest-host statute, it nevertheless argues that *Pryor's* reasoning is equally applicable to charitable immunity. This is a persuasive argument and apparently one which Judge Lumbard adopted in his *Rosenthal* dissent. It was his conclusion that because the alleged malpractice took place in Massachusetts, and because both defendants have all their major contacts with Massachusetts, that state's law should govern where it operates to limit defendants' liability.

35. 407 F.2d at 1040.

36. While Judge Fuld's Rule 2 and its embodiment in *Pryor* present me with some difficulty, the *Neumeier holding* does not. As Judge Oakes points out in *Rosenthal* 475 F.

2d at 442, *Neumeier* involved an Ontario decedent and did not present the question of New York's interest in compensating its domiciliaries for injuries and wrongful death in a foreign state.

The *Rosenthal* and *Pryor* decisions are difficult, if not impossible, to reconcile. Both involved New York plaintiffs suing foreign defendants for accidents occurring in a foreign state within whose borders defendants' possible liability was severely limited. *Rosenthal*, however, refused to apply the foreign state's law while *Pryor* held it to be controlling. In light of this I am compelled to conclude that, although Judge Oakes does not mention *Pryor* in his opinion, the court's decision in *Rosenthal*, if it did not completely overrule *Pryor*, at the very least limited it to statutes and doctrines not abhorrent to New York's public policy.[37] In either case, having found the decision in *Rosenthal* with respect to wrongful death recovery limitations to be equally applicable to the charitable immunity doctrine, I am constrained to follow the majority in that decision and *Pryor*, therefore, does not govern.[38]

█ As a final matter I conclude that the refusal by New York to apply the Massachusetts law on charitable immunity is not so unreasonable as to violate the full faith and credit clause for the reasons set forth by the Court of Appeals in *Rosenthal* 475 F.2d at pages 446–447. Judge Lumbard's argument, while admirable in its reasoning, was not adopted by the majority.

*Summary*

It is my conclusion that the New York courts would not apply the Massachusetts doctrine of charitable immunity to the situation at bar. I therefore, grant plaintiff's motion to strike defendant New England Baptist Hospital's affirmative defense seeking to invoke this doctrine.

So ordered.

---

37. The guest-host statute has never been held to be objectionable to New York public policy.

38. Furthermore the Massachusetts interest here is far weaker than the Florida interest in *Pryor* and even accepting the applicability of that decision it is not clear that the weighing of the factors would result in the same determination.