Gerard HAEHL, as Administrator of the goods, chattels and credits of Janet M. Haehl, Deceased, et al., Plaintiffs,

v.

VILLAGE OF PORT CHESTER et al., Defendants.

Nos. 75 CIV 307, 75 CIV 308, 75 CIV 1629 and 76 CIV 2912.

United States District Court, S. D. New York.

Nov. 21, 1978.

Lipsig, Sullivan, Mollen, Liapakis, New York City, Michael N. Block, New York City, of counsel and Vincent A. G. O'Connor, New York City, for plaintiffs Haehl et al.

Fuchsberg & Fuchsberg, New York City, for plaintiffs, Johanessen, et al; Cyrus M. Diamond, Jesse C. Sable, New York City, of counsel.

Joseph Kelner, New York City, for plaintiff Wojciechowski.

Clark, Gagliardi & Miller, White Plains, N. Y., for defendant Village of Port Chester; David Worby, Henry G. Miller, White Plains, N. Y., of counsel.

Bower & Gardner, New York City, for defendant Port Chester Electrical; Warren J. Sanger, New York City, of counsel.

King, Edwards & O'Connor, White Plains, N. Y., for defendant Gostylia; Dennis L. O'Connor, William S. Oleson, White Plains, N. Y., of counsel.

Smith, Mazure & Wilkins, P. C., New York City, for defendant Carol Gaetaniello; Stanley Wilkins, David E. Mazure, New York City, of counsel.

Mead, Dore & Voute, P. C., White Plains, N. Y., for defendant and third party plaintiffs Gulliver's Restaurant, Hunt, Latiak, and Fondu; Donald A. Mead, William K. Kerrigan, White Plains, N. Y., of counsel.

Gantman, Cyperstein & Peckman, New York City, for third party defendant Beneroff Const. Corp.; Milton Steger, New York City, of counsel.

Hughes, Hubbard & Reed, New York City, for defendant Morgan Assoc.; James B. Kobak, Jr., David W. Wiltenberg, Joseph Garni, New York City, of counsel.

Anderson, Russell, Kill, Olick, New York City, for third party defendant Graves; Albert J. Gaynor, White Plains, N. Y., of counsel.

Bai, Polloch, Dunnigan, Bridgeport, Conn., McNamara, Clancy, Kenney, Sullivan, Bridgeport, Conn., for Town of Greenwich; James F. Kenney, Thomas A. Mulligan, Arnold J. Bai, Bridgeport, Conn., Mary Summers, of counsel.

Burke, Curry, Hammill & O'Brien, Mineola, N. Y., for defendant Design Image and Kalwall Corp.; Bernard F. Carlin, Mineola, N. Y., of counsel.

## OPINION

SAND, District Judge.

These consolidated actions for personal injury and wrongful death have been brought by the victims of a fire and their representatives. The present motion is

brought by a third-party defendant, the Town of Greenwich, Connecticut. Greenwich contends that as a matter of law it is not liable to the defendant/third party plaintiffs, and seeks an order dismissing the third-party complaints pursuant to F.R.Civ.P. 12(c) or for summary judgment pursuant to F.R.Civ.P. 56.

## I. *Conflicts of Laws*

The fire which gives rise to plaintiffs' actions occurred on the night of June 29–30, 1974. Plaintiffs and plaintiffs' decedents were on the premises of Gulliver's Restaurant ("Gulliver's"), which was located in a building complex on the New York-Connecticut border. It appears that the fire was set in a bowling alley which adjoined the restaurant.

Two fire departments responded to the fire: that of the Village of Port Chester ("Port Chester"), and that of the Town of Greenwich ("Greenwich"). Gulliver's and Port Chester are among the defendants, and they in turn have impleaded Greenwich.

 As a federal court sitting in diversity jurisdiction, we of course apply the choice of law rules of New York. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). New York follows an "interest analysis" approach to such questions: the court applies the law "of the jurisdiction which, because of its relationship or contact with the occurrence or the parties has the greatest concern with the specific issue raised in the litigation." *Babcock v. Jackson*, 12 N.Y.2d 473, 481, 240 N.Y.S.2d 743, 749, 191 N.E.2d 279, 283 (1963). The New York Court of Appeals has emphasized in a recent case, however, that "[i]t is true that *lex loci delicti* remains the general rule in tort cases to be displaced only in extraordinary circumstances." (citations omitted). *Cousins v. Instrument Flyers, Inc.*, 44 N.Y.2d 698, 699, 405 N.Y.S.2d 441, 442, 376 N.E.2d 914, 915 (1978). We must therefore determine, first, the state of the wrong, and second, if it be determined that the state of the wrong is New York, whether there exist such extraordinary circumstances as to warrant applying the law of Connecticut to the issue of Greenwich's immunity from suit.

As noted above, Gulliver's Restaurant was located in part in the State of New York and in part in Connecticut. From the papers now before the Court, it appears that the restaurant was primarily within the State of New York.[1] Greenwich concedes that its fire department entered New York, although it disputes the extent of its activities within that state. The third-party plaintiffs allege that the fire was set in New York (in a bowling alley adjoining the restaurant), that the Greenwich fire fighting activities were conducted "largely" within the State of New York, that the decedents died within that state, and that Greenwich "undertook to coordinate their efforts with the [Port Chester] fire department".[2]

Further elaboration of these factual allegations must await future proceedings in these actions. On the present state of the record, however, the Court deems the state of the wrong to be New York. Thus, under the recent statement of New York's conflicts approach, we must determine whether there exist extraordinary circumstances which warrant displacing the law of New York in favor of Connecticut law.

 Under Connecticut common law, a municipality is absolutely immune from lia-

---

**1.** *See* Memorandum by the Town of Greenwich in response to Opposition to its Motion to Dismiss, Attachment (Map) (indicating location in New York State of Gulliver's dance floor). According to Greenwich, the New York-Connecticut state line "runs almost diagonally through the commercial complex where the fire occurred", *i. e.*, through the shopping center as a whole. *Id.* at 5. It appears that the restaurant's front door was in Connecticut, with the remainder of the building in New York. Affirmation in Opposition of Defendants Gulliver's Restaurant, Inc., Dennis Latiak, Henry Fondu and Charles Hunt, ¶ 2; rule 9(g) Statement of defendants Gulliver's Restaurant, Inc., Charles Hunt, Henry Fondu and Dennis Latiak, ¶ 12.

**2.** Affirmation in Opposition of defendants Gulliver's Restaurant, Inc., Dennis Latiak, Henry Fondu and Charles Hunt, ¶ 8.

bility for injuries caused by the negligence of its firemen. By statute, however, the municipality is obligated to indemnify the fireman for "all sums which such fireman becomes obligated to pay by reason of liability imposed . . . by law for damages to person or property . . .".[3] If suit is brought against the negligent fire department personnel, the municipality thus assumes the ultimate liability. Governmental immunity is abrogated for suits brought pursuant to this statute.[4] It is conceded, however, that the third-party plaintiffs did not follow the prescribed procedure in impleading Greenwich, and under Connecticut common law their suit would be barred. *Sanders v. City of Ansonia*, 33 Conn.Sup. 195, 369 A.2d 1129 (1976).

In New York, the common law immunity of the state and its political subdivisions has been abrogated by statute. Court of Claims Act § 8 (McKinney's 1963); *Bernardine v. City of New York*, 294 N.Y. 361, 62 N.E.2d 604 (1945). Under New York law, a municipality is "answerable equally with individuals and private corporations for wrongs of officers and employees." *Id.* at 365, 62 N.E.2d at 605. Whether or not a municipality was under a duty to a plaintiff in a given case, and whether or not that duty was breached, are separate questions.

Greenwich contends that, as a political subdivision of the State of Connecticut, the immunity it enjoys under Connecticut common law must also protect it when it enters another state. Among the "overriding legal and public policy considerations" which it argues are unique to this case, Greenwich notes that any entry of Greenwich personnel into the State of New York was motivated by a desire to further "a joint public interest of both jurisdictions, that of saving lives in the face of a serious conflagration in a public building."[5] Greenwich also contends that the application of New York law would have a "devastating" effect on interstate and intermunicipal relationships, to the ultimate detriment of both Connecticut and New York citizens. Finally, Greenwich alleges that "under law the fire department has no choice but to answer an alarm" and under New York law could be held liable for "abandonment or neglect".[6] The basis on which it is asserted that a failure to respond to a New York alarm would give rise to any liability under the laws of New York or Connecticut remains unclear to this Court, however.

The public policy interests put forward by Greenwich for application of Connecticut's immunity doctrine are serious and weighty factors. Nevertheless, we do not believe a New York court would find them controlling, in light of the substantial interests of New York in applying its own standards.

We note first that the plaintiffs in the third-party action are New York entities: the Town of Port Chester, itself a municipality, and a New York corporation (Gulliver's Restaurant, Inc.). As discussed *supra*, we deem plaintiffs' injuries to have been suffered in New York. It appears that the only interest Connecticut has in seeing its law applied is in protecting its municipalities against liabilities incurred when they enter neighboring states. This is, of course, a very significant interest, and as Greenwich points out, it has serious implications for interstate and intermunicipal relations. We note, however, that the statute which abrogates Greenwich's governmental immunity when actions are brought against individual firemen authorizes municipalities to procure insurance against resulting indemnification liabilities, or to self-insure. Whatever difficulties may arise from the application of New York law to these actions by New York plaintiffs may also be amenable to such a solution. The problem presented by this case with respect to providing emergency services to border communities should perhaps also be addressed in an interstate compact.

---

3. Conn.Gen.Stat.Ann. § 7–308 (West 1972).

4. *Id.*

5. Memorandum of the Town of Greenwich in Response to Opposition to its Motion to Dismiss, at 6.

6. *Id.* at 5.

In *Neumeier v. Kuehner*, 31 N.Y.2d 121, 335 N.Y.S.2d 64, 286 N.E.2d 454 (1972), the New York Court of Appeals stated that "New York has a deep interest in protecting its own residents, injured in a foreign state, against unfair or anachronistic statutes of that state . . .".[7] That case involved the guest-passenger statute of a foreign jurisdiction, which barred an action by an automobile passenger against his negligent host. The policy considerations involved in a foreign state's provision for governmental immunity are of course considerably different from those which underlie a guest-passenger statute. We believe, however, that a New York court would have a similarly deep interest in protecting its residents, injured in their own state, against a foreign immunity which it deemed "unfair or anachronistic."

This issue has not arisen to date in the New York courts, or in any decision of the federal courts sitting in that state. We do find some guidance, however, in the decision of the district court in *Rosenthal v. Warren*, 374 F.Supp. 522 (S.D.N.Y.1974). Plaintiffs' decedent, a New Yorker, had died after an operation in a Massachusetts hospital. The hospital raised as a defense to the wrongful death action the charitable immunity enjoyed by Massachusetts hospitals. Lacking guidance from New York decisions, the district court analyzed the issue in light of *Neumeier v. Kuehner, supra*, and earlier cases in New York's developing choice of law doctrine. The court noted that New York had itself abolished the charitable immunity defense more than fifteen years earlier and characterized it as "unfair, out of step with the times and abhorrent to the public policy [of New York]". *Id.* at 525. It further noted that the immunity had been abolished by all but three or four states and was "harshly criticized" by the commentators. *Id.*

As we noted earlier, New York has abolished the governmental immunity of its municipalities. And, as with charitable immunity, there has also been a recent trend toward abrogation of the doctrine of governmental immunity. *See* Prosser, *Law of Torts* 984–986 (4th Ed. 1971).

Finally, the *Rosenthal* court determined that Massachusetts had no substantial current interest in the application of charitable immunity, since that state had in the interim abolished the doctrine by statute. *Id.* at 526–27. The provisions of Connecticut's statutory procedure for bringing an indirect action against municipalities demonstrates that its policy of governmental immunity is not an absolute one; if brought properly, recovery may in fact be had from the municipality's coffers. We therefore do not find a fundamental policy to underlie Connecticut's rule. While Greenwich may be immune from suit, it is not absolutely free from liability.

We conclude that a New York court would apply New York law to the issue of Greenwich's liability.

## II. *Statute of Limitations*

Greenwich has raised, as a second point, the bar of the one-year statute of limitations incorporated into the Connecticut statute which authorizes indirect suit. In light of our determination that New York law governs the issue of Greenwich's substantive liability, there is no basis for applying the limitations period of the Connecticut statute.

We note, however, that New York has a similar short statute of limitations for actions against municipalities. In such actions, notice of claim must be made within 90 days "after the claim arises". General Municipal Law § 50–e (McKinney's 1977), and the action must be commenced within one year and 90 days "after the happening of the event upon which the claim is based." *Id.* § 50–i.

Whether a third-party claim must comply with the requirements of the General Municipal Law is, of course, a question of state law. *See Minneapolis, St. Paul & Sault Ste. Marie R. Co. v. City of Fond Du Lac*, 297 F.2d 583 (7th Cir. 1961); *Walding-*

---

7. 31 N.Y.2d at 125, 335 N.Y.S.2d at 68, 286 N.E.2d at 456.

*er v. P & Z Co.*, 414 F.Supp. 59 (D.Neb. 1976).

The New York Court of Appeals has held that the notice of claim requirement of § 50–e does not apply in third-party actions against municipal defendants. *Matter of Valstrey Service Corp. v. Board of Elections*, 2 N.Y.2d 413, 161 N.Y.S.2d 52, 141 N.E.2d 565 (1957). And the state's lower courts have held that, in such third-party actions, the limitations period of § 50–i also does not apply. *Rizzo v. Steiner*, 36 Misc.2d 701, 233 N.Y.S.2d 647 (1962).

 These principles were recently re-affirmed by the New York Court of Appeals, with respect to actions for indemnification or contribution against the state, in *Bay Ridge Air Rights, Inc. v. State*, 44 N.Y.2d 49, 404 N.Y.S.2d 73, 375 N.E.2d 29 (1978). We therefore conclude that, under New York law, neither the notice of claim requirement nor the limitations period of the General Municipal Law applies in third-party actions against municipal defendants.

### III. *Substantive Law*

The third point raised by Greenwich is that, even under New York law, it is not liable for negligence in conducting fire fighting activities, in that a municipality conducts such activities for the benefit of the general public and, therefore, owes no duty to any particular citizen such as the third-party plaintiffs herein.

The third-party complaints state that Greenwich was negligent in:

" . . . failing to respond with reasonable promptitude to the . . . fire and . . . failing to take appropriate steps so as to remove or rescue victims from said premises; in precluding others from entering the premises to carry out rescue operations; in pursuing a totally inadequate fire fighting procedure; in failing to enforce building construction laws; in employing severely incompetent fire fighting procedures; in failing to promulgate proper fire prevention rules and practices; in failing to provide adequate fire fighting equipment; in failing to make use of the fire fighting equipment which was available; and by being otherwise negligent under the circumstances."

 Under New York law, it is clear that a municipality is not liable for failure to enforce a statute or regulation. *Sanchez v. Village of Liberty*, 42 N.Y.2d 876, 397 N.Y.S.2d 782, 366 N.E.2d 870 (1977). Neither is it liable for failure to make an inspection, *Whitney v. City of New York*, 27 A.D.2d 528, 275 N.Y.S.2d 783 (1st Dep't 1966), or to ascertain the existence of violations, *see Smullen v. City of New York*, 28 N.Y.2d 66, 320 N.Y.S.2d 19, 268 N.E.2d 763 (1971). We therefore hold that insofar as the allegations concern such activities, the complaint fails to state a cause of action against Greenwich.

 There is also no liability, under New York law, for failure to furnish adequate fire protection. *Messineo v. City of Amsterdam*, 17 N.Y.2d 523, 267 N.Y.S.2d 905, 215 N.E.2d 163 (1965); *Motyka v. City of Amsterdam*, 15 N.Y.2d 134, 256 N.Y.S.2d 595, 204 N.E.2d 635 (1965); *LaDuca v. Town of Amherst*, 53 A.D.2d 1011, 386 N.Y.S.2d 269 (4th Dep't 1976); *Vogel v. Liberty Fuel Corp.*, 52 A.D.2d 667, 382 N.Y.S.2d 264 (3d Dep't 1976). *Cf. Riss v. City of New York*, 22 N.Y.2d 579, 293 N.Y.S.2d 897, 240 N.E.2d 860 (1968); *Bass v. City of New York*, 38 A.D.2d 407, 330 N.Y.S.2d 569 (1st Dep't 1972), *aff'd* 32 N.Y.2d 894, 346 N.Y.S.2d 814, 300 N.E.2d 154 (1973) (failure to furnish adequate police protection).

As the New York Court of Appeals cautioned in a recent case, "a municipality cannot be held liable solely for its failure to provide adequate public services. The extent of public services afforded by a municipality is, as a practical matter, limited by the resources of the community. Deployment of these resources remains, as it must, a legislative-executive decision which must be made without the benefit of hindsight." *Florence v. Goldberg*, 44 N.Y.2d 189, 404 N.Y.S.2d 583, 375 N.E.2d 763 (1978).

 Thus, in order to recover for a municipality's negligence, "the duty breached must be more than a duty owing to the

general public. There must exist a special relationship between the municipality and the plaintiff, resulting in the creation of 'a duty to use due care for the benefit of particular persons or classes of persons'." *Id.* 404 N.Y.S.2d at 586, 375 N.E.2d at 766. (citations omitted).

Such a special relationship has been found in certain circumstances. In *Schuster v. City of New York*, 5 N.Y.2d 75, 180 N.Y.S.2d 265, 154 N.E.2d 534 (1958), plaintiff's decedent had responded to police requests for information about a well-known criminal. He subsequently received threats to his life, and ultimately was shot and killed. The Court of Appeals held that "where persons actually have aided in the apprehension or prosecution of enemies of society under the criminal law, a reciprocal duty arises on the part of society to use reasonable care for their police protection, at least where reasonably demanded or sought." *Id.* at 81, 180 N.Y.S.2d at 270, 154 N.E.2d at 537. It is clear, however, that under New York law, not every request for special police protection will give rise to such a special duty; a plaintiff cannot unilaterally call into existence a special relationship. *See Riss v. City of New York, supra.* In *Schuster*, the court explained that the government had actively called for help from the citizenry and used the help offered by decedent. "Under such circumstances, . . . 'there exists a relation out of which arises a duty to go forward'." *Id.* at 82, 180 N.Y.S.2d at 271, 154 N.E.2d at 538.

Liability was also upheld in *Smullen v. City of New York, supra.* Plaintiff's decedent, a construction worker, was killed when a trench in which he was working caved in on him. Just before he descended into the trench, a city construction inspector assured the decedent that "[the trench] is pretty solid there" and said "I don't think it needs to be shored", when in fact city safety regulations required that trenches of that depth, slope and soil condition be shored.

A special duty may also be assumed by the city expressly, as was held to have occurred in *Florence v. Goldberg, supra.* By its Police Department rules and regulations, the city had assumed a duty to supervise school crossings for the protection of young children. The New York Court of Appeals held that the city would be liable to an individual child injured as a consequence of its negligent breach of that duty.

We have, however, found no New York cases in which liability was found to exist in connection with fire fighting activities. The circumstances of fire fighting operations, as compared with police protection, apparently have not heretofore given rise insofar as any reported case discloses to the type of special relationship and consequent special duty required by the New York courts for the maintenance of a negligence action. We note especially in this connection *Messineo v. The City of Amsterdam,* 17 N.Y.2d 523, 267 N.Y.S.2d 905, 215 N.E.2d 163 (1965). Plaintiff's complaint in that action alleged that the fire department had responded to a call at his home and indicated to him that the fire had been completely extinguished and that there was no further danger. Plaintiff's home was completely destroyed, however, when the fire broke out again some five hours later. The complaint was nevertheless dismissed. We also note that those cases in which police protection or the conduct of inspectors has been held actionable have involved the element of a special and particularized reliance by the plaintiff. *See Schuster v. City of New York, supra; Florence v. Goldberg, supra; Smullen v. City of New York, supra; cf. Gannon Personnel Agency, Inc. v. City of New York,* 57 A.D.2d 538, 394 N.Y.S.2d 5 (1st Dep't 1977).

 Referring to the allegations of the third-party complaints, we find no indication of a special relationship arising from the circumstances or from a voluntary assumption of duty. The complaint alleges negligence in Greenwich's response to the fire and in its methods of fighting it, and under New York law such allegations, without more, do not constitute a cause of action. Nevertheless, we are reluctant to deny the third-party plaintiffs an opportu-

nity to bring out at a later stage in these proceedings whatever facts they may have in support of allegations such as would establish such a relationship or duty. The record before us contains sharp conflicts of fact regarding the conduct of the Greenwich Fire Department, and it may be that Greenwich conducted itself in such a way as to give rise to a special relationship with the third-party plaintiffs under the circumstances then obtaining and to induce their reliance. *Cf. Smullen v. City of New York, supra.*

Third-party defendant's motion to dismiss or for summary judgment is denied, with leave to renew at later stages of this proceeding.[8]

SO ORDERED.

---

8. The motions of defendant Town of Greenwich were renewed at the close of plaintiffs' opening statements on November 21, 1978. It appearing that plaintiffs' allegations were directed solely to negligence in fire-fighting activities, and there being no allegation of a special duty owed to the plaintiffs, defendant's motions were granted.